450 S.E.2d 809

Charles T. DARLINGTON, Howard Vest, Donzetta R. Roush, F.C. Stump, L.R. Bailey, Gordon Gregory, Sgt. R. Steven Tanner, Lt. Charles B. Lilly, Sgt. W.R. Garaffa, Cpl. J.E. Williams, Capt. E.W. Bennett, Sr., Sgt. Jimmy W. Stone, Cpl. Mitchell P. Barley, Cpl. Marion Mudd, Sgt. Jerry Mitchell, Lt. Michael K. Murkham, Sgt. Arthur Bolen, Dep. M.R. Bumgarner, G.A. Reed, E.S. Rogers, Rhonda Winders, David Gentry, Carol J. Calhoun, Cpl. T. Moran, Robert J. Elam, K.R. Hopkins, R.L. Booker, Ricky E. Snead, Robert E. Thompson, James P. Vance, Larry E. Richmond, James F. Hawley, Michael W. Hopkins and C.R. Bailey, Plaintiffs,

v.

R. Michael MANGUM, Sheriff of Raleigh County; and Paul H. Flanagan, Vernon P. Barley and Jack P. McDonald, as Duly Elected Members of the County Commission of Raleigh County, and the County Commission of Raleigh County, a Statutory Corporation; and

John Parkulo, Alvin Chambers and Richard Terry as Duly Elected Members of the Deputy Sheriff's Civil Service Commission and the Deputy Sheriff's, Defendants.

No. 22297.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 21, 1994.

Decided Nov. 2, 1994.

Robin Jean Davis, John F. Dascoli, Segal & Davis, Charleston, for plaintiffs.

Carl W. Roop, Canterbury, Poling & Roop, and K. Bruce Lazenby, and James R. Sheatsley, Gorman & Sheatsley, Beckley, for defendants.

MILLER, Justice: [1]

This case is before us upon a certified question from the Circuit Court of Raleigh County, West Virginia. The question presented is whether the Raleigh County Commission (Commission) had the authority to require deputy sheriffs who wanted health insurance to pay a portion of the monthly premium. The issue arose in September, 1991. After reviewing its employee health care costs, which amounted to $350,000.00 a year, the Commission decided to charge county employees a premium of $25.00 a month for single persons and $50.00 a month for a family.

A number of deputy sheriffs (Plaintiffs) subsequently filed a declaratory judgment action, contending that the Commission's action violated that portion of W.Va.Code, 7–14–17(a) (1976), which provides that a deputy sheriff may not "... be removed, discharged, suspended or reduced in rank or pay except for just cause...." After receiving briefs and arguments of counsel, the circuit court determined that W.Va.Code, 7–14–17(a) did not control the issue and certified the question to this Court. We agree with the circuit court's conclusion.

---

1. Pursuant to an Administrative Order entered by this Court on September 13, 1994, retired Justice Thomas B. Miller was recalled for the September 1994 term because of the physical incapacity of Chief Justice W.T. Brotherton, Jr.

The language of W.Va.Code, 7–14–17(a), relates to disciplinary proceedings initiated against deputy sheriffs. This is quite evident when the entire text of W.Va.Code, 7–14–17(a) is read.[2] Historically, in matters of statutory construction, we have held that the complete text of a statute should be considered in order to determine its meaning. As we explained in syllabus point 1 of *Banner Printing Company v. Bykota Corporation*, 182 W.Va. 488, 388 S.E.2d 844 (1989):

"It is a fundamental rule of construction that, in accordance with the maxim *noscitur a sociis*, the meaning of a word or phrase may be ascertained by reference to the meaning of other words or phrases with which it is associated. Language, although apparently general, may be limited in its operation or effect where it may be gathered from the intent and purpose of the statute that it was designed to apply only to certain persons or things, or was to operate only under certain conditions." Syllabus point 4, *Wolfe v. Forbes*, 159 W.Va. 34, 217 S.E.2d 899 (1975).

In this case, the term "reduction in wages" in W.Va.Code, 7–14–17(a) is used as part of a group of disciplinary actions that cannot be taken without affording the deputy sheriff the procedural rights contained in this statute. The action taken by the Commission was not predicated on any disciplinary event, but instead was related to the payment of insurance premiums for health coverage.[3]

Of particular relevance is the Commission's argument that under W.Va.Code, 7–5–20 (1972), the Commission has no absolute duty to provide medical coverage, but is merely authorized by the legislature to do so. W.Va.Code, 7–5–20, states that the Commission ". . . is hereby authorized and empowered to pay the entire premium cost or any portion thereof of such group policy or policies."[4] This section also provides that, when

2. W.Va.Code, 7–14–17(a), states:

On and after the effective date [July 1, 1971] of this article, no deputy sheriff of any county subject to the provisions of this article shall be removed, discharged, suspended or reduced in rank or pay except for just cause, which shall not be religious or political, except as provided in section fifteen [§ 7–14–15] of this article; and no such deputy shall on and after the effective date [July 1, 1971] of this article, be removed, discharged, suspended or reduced except as provided in this article and in no event until he shall have been furnished with a written statement of the reasons for such action. In every case of such removal, discharge, suspension or reduction, a copy of the statement of reasons therefor and of the written answer thereto, if the deputy sought to be removed, discharged, suspended or reduced desires to file such written answer, shall be furnished to the civil service commission and entered upon its records. If the deputy sought to be removed, discharged, suspended or reduced shall demand it, the civil service commission shall grant him a public hearing, which hearing shall be held within a period of ten days from the filing of the charges in writing or the written answer thereto, whichever shall last occur. At such hearing the burden shall be upon the removing, discharging, suspending or reducing sheriff, hereinafter in this section referred to as "removing sheriff," to justify his action, and in the event the removing sheriff fails to justify his action before the commission, then the deputy removed, discharged, suspended or reduced shall be reinstated with full pay, forthwith and without any additional order, for the entire period during which he may have been prevented from performing his usual employment, and no charges shall be officially recorded against his record. The deputy if reinstated or exonerated, shall, if represented by legal counsel, be awarded an attorney fee of no more than two hundred fifty dollars and such fee shall be determined by the commission and paid by the removing sheriff from county funds. A written record of all testimony taken at such hearing shall be kept and preserved by the civil service commission, which record shall be sealed and not be open to public inspection, if no appeal be taken from the action of the commission.

3. Plaintiffs argue that the term "wage" must include insurance premiums as fringe benefits as defined in W.Va.Code, 21–5–1(c) of the West Virginia Wage Payment Act. We decline to address this argument because we have decided that the predicate statute relied on, W.Va.Code, 7–14–7(a), is not applicable. Therefore, we need not determine what the word "wage" means as used in this subsection.

4. W.Va.Code, 7–5–20, in relevant part, states:

Every county through its county court [county commission] shall have plenary power and

the Commission does not pay the entire cost of the premium, it is authorized to deduct the employee's contribution from his or her salary or wage payment.[5] Thus, it seems clear that under W.Va.Code, 7–5–20, a county commission is authorized to require employees who elect to participate in the county's group health insurance to pay part of the premium cost.[6]

■ Plaintiffs also contend that the Commission's Personnel Handbook provides that it will pay 100% of the employee's health insurance cost after the first twelve months of employment. Both Sheriff Mangum and his predecessor, Sheriff England, admitted that they made statements to this effect to deputy sheriffs. Such statements are contrary to the language of W.Va.Code, 7–5–20, which permits the Commission to pay either all or part of its group health insurance premiums. In *Freeman v. Poling*, 175 W.Va. 814, 338 S.E.2d 415 (1985), we discussed at some length the question of whether promises, which were contrary to law, made by public officials when functioning in their governmental capacity were binding. We concluded that they were not, as otherwise such promises could override statutory law. We stated in syllabus point 3 of *Freeman*:

"A state or one of its political subdivisions is not bound by the legally unauthorized acts of its officers and all persons must take note of the legal limitations upon their power and authority. *Cunningham v. County Court of Wood County*, 148 W.Va. 303, 310, 134 S.E.2d 725, 729 (1964)." Syllabus Point 2, *West Virginia Public Employees Ins. Bd. v. Blue Cross Hosp. Serv., Inc.*, 174 W.Va. 605, 328 S.E.2d 356 (1985).

More recently, in *Williams v. Brown*, 190 W.Va. 202, 437 S.E.2d 775 (1993), we dealt with the question of whether statements in a public agency's employment manual could override a statutory provision. We decided that such statements were not binding and quoted from *Fiorentino v. United States*, 221 Ct.Cl. 545, 552, 607 F.2d 963, 968 (1979), *cert. denied*, 444 U.S. 1083, 100 S.Ct. 1039, 62 L.Ed.2d 768 (1980):

It is unfortunately all too common for government manuals, handbooks, and in-house publications to contain statements that were not meant or are not wholly reliable. *If they go counter to governing statutes...., they do not bind the government, and persons relying on them do so at their peril.* (Emphasis added).

For the foregoing reasons, we hold that the plaintiffs are not entitled to bind the

authority to negotiate for, secure and adopt for the officers and regular employees thereof, other than provisional, temporary, emergency and intermittent employees, who are in officer or employee status with such county on and after the effective date of this section [June 9, 1972], a policy or policies of group insurance written by a carrier or carriers chartered under the laws of any state and duly licensed to do business in this State and covering life; health; hospital care; surgical or medical diagnosis, care and treatment; drugs and medicines; remedial care....

5. The applicable language of W.Va.Code, 7–5–20, is:

Whenever the above described officers or regular employees shall indicate in writing that they have subscribed to any of the aforesaid insurance plans on a group basis and the entire cost thereof is not paid by the county court [county commission], the county court [county

commission] is hereby authorized and empowered to make periodic premium deductions of the amount of the contribution each such subscribing officer or employee is required to make for such participation from the salary or wage payments due each such subscribing officer or employee as specified in a written assignment furnished to the county clerk by each such subscribing officer or employee.

6. Plaintiffs made no claim that they had a binding contract or that they had been promised any particular level of compensation for their entire working lives. Thus, this case is distinguishable from cases involving public employee pensions where a particular pension is promised based upon a certain number of years of service and the employee performs part or all of his or her bargain. Here the employee receives monthly health insurance and a monthly salary, and there is no express or implied *contract* of long-term employment.

Commission based on these statements in the county's employment manual. The statements were contrary to the provisions of W.Va.Code, 7–5–20.

The certified question having been answered, this case is dismissed.

BROTHERTON, C.J. did not participate.

MILLER, Retired J., sitting by temporary assignment.