376 S.E.2d 327

**James C. INGRAM, Sr., et al.**

v.

**CITY OF CHARLESTON, a Municipal Corporation.**

**Carl E. BEAVER, et al.**

v.

**CITY OF CHARLESTON.**

**No. 18251.**

Supreme Court of Appeals of West Virginia.

Dec. 16, 1988.

---

**8.** *See* W.Va.Code § 19–18–5 (1988), at footnote   one, *supra.*

**314**

Grant Crandall, William D. Turner, Crandall & Pyles, Charleston, for Ingram and Bever.

W. Warren Upton, Albert F. Sebok, Jackson & Kelly, Charleston, for City of Charleston.

PER CURIAM:

This is an appeal by James C. Ingram, Sr. and other shift firefighters of the City of Charleston from a summary judgment order entered by the Circuit Court of Kanawha County on December 4, 1987. This case involves the propriety of the City of Charleston's calculation of the appellants' pay since 1983. The appellants indicate that there are no genuine issues of material fact in this matter, and thus they do not challenge the entry of summary judgment, but they claim that the court's conclusion and judgment are contrary to the law. After reviewing the record, we conclude that the appellants' assertions are without merit. Accordingly, we affirm the judgment of the Circuit Court of Kanawha County.

This case grows out of the legislative enactment of *W. Va. Code*, 21–5C–1, *et seq.*,

the West Virginia wage and hour law, which went into effect on January 1, 1967. The statutory sections require employers to compensate employees at a rate of at least 1.5 times their regular rate of pay for any hours worked over the statutory maximum "straight time" hours per week.[1]

The appellants, who are shift firefighters paid on an hourly basis, filed the first complaint instituting these actions on January 29, 1985, challenging the City of Charleston's payroll practices. They claimed that the City had violated *W. Va. Code*, 21–5C–3, in that it had failed to pay them not less than one and one-half times their regular rate of pay for all hours worked beyond forty hours per week.[2]

■ The facts, as developed, show that following the enactment of the 1967 wage and hour law, the City of Charleston established a new approach to paying its firefighters. Under the City's approach, a maximum compensable salary estimate for each class of firefighters was set out in the municipal budget. In conjunction with the budget, the City Council adopted an hourly rate of pay for each class of firefighter. The maximum estimate was substantially equal to the firefighters' hourly rate multiplied by forty, the number of regular hours each firefighter was scheduled to work each week, added to 1.5 times the hourly rate multiplied by sixteen, the number of overtime hours each firefighter was scheduled to work each week.[3]

---

1. *West Virginia Code,* 21–5C–3, the statute regulating overtime, provides, in relevant part:

   (a) On and after the first day of July, one thousand nine hundred eighty, no employer shall employ any of his employees for a workweek longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate of not less than one and one-half times the regular rate at which he is employed.

2. Although extensive facts relating to the City of Charleston's payroll practices in the period before 1983 were developed in the record, under *W. Va. Code,* 21–5C–8(d), the statute creating a limitations period for actions under *W. Va. Code,* 21–5C–1, *et seq.,* the appellants are precluded from recovering for any period more than two years before the filing of their actions. *W. Va. Code,* 21–5C–8(d) provides:

   In any such action the amount recoverable shall be limited to such unpaid wages as should have been paid by the employer within two years next preceding the commencement of such action. Nothing in this article shall be construed to limit the right of an employee to recover upon a contract of employment.

3. For instance, in the 1984–85 City Budget, as revised August 6, 1984, it was specified that a fireman with ten years service would be paid at a rate of $5.512 per hour, and it was estimated that his maximum compensation would be $18,337.00 per year.

   Calculations based on these figures indicate the following:

   | | |
   |---|---:|
   | The rate per hour $5.512 × 40 = | 220.48 |
   | + The overtime rate per hour (1.5 × the regular rate) $8.26 × 16 = | 132.16 |
   | Weekly rate | 352.64 |
   | × 52 number of weeks per year | $18,337.28 |

It is undisputed that the hourly rate and the overtime rate of pay for each class of firefighters were established before the beginning of each fiscal year. The firefighters were not necessarily paid the maximum amount established in the budget estimate, but instead an amount computed by multiplying the hours worked by the hourly and overtime rates of pay.

■ In the present proceeding, the firefighters argue that the technique used by the City of Charleston constitutes a "boosted hours method" of payment which is legally unacceptable and that it results in a depressed hourly rate of pay. They indicate that this method of pay was adopted by the City of Charleston solely for shift firefighters after the West Virginia Wage and Hour Act took effect, in response to the overtime payment requirement of the Act and with the intent of circumventing the overtime provision of the Act while presenting the facade of compliance with it. They argue that it is improper under the ruling of this Court in *Local 313, I.A. of F. v. City of Morgantown*, 174 W.Va. 122, 323 S.E.2d 604 (1984).

In the *Morgantown* case, this Court ruled that a compensation scheme adopted by the City of Morgantown violated *W. Va. Code*, 21–5C–1, *et seq.* Under the scheme, firefighters were paid a fixed salary, and there was no agreement or formula that set an hourly amount for regular pay or overtime pay. The City of Morgantown took the position that hourly rates could be inferred by working backward and dividing the fixed salary and by the number of hours worked. This Court disagreed and concluded in syllabus point 3 that:

> Where a fixed salary is paid and there is no express agreement or formula shown that sets an amount for a regular rate of pay and an overtime rate of at least one and one-half times the regular rate, such an agreement or formula may not be inferred from hypothetical or retroactive calculations.

The Court notes that there was a $0.28 difference in the estimate and the actually calculated amount of pay. This Court does not believe

In the later case of *Pullano v. City of Bluefield*, 176 W.Va. 198, 342 S.E.2d 164 (1986), the Court again addressed the question of whether a scheme for the payment of firefighters complied with statutory provisions relating to overtime. In that case the City of Bluefield adopted designated annual salaries for its firefighters as well as hourly rates of pay for them. When the listed hourly rates were multiplied by forty, representing the number of regular hours worked each week, and the product was added to one and one-half times the hourly rate multiplied by sixteen, representing the number of overtime hours worked each week, the total of the two figures annualized equaled the designated salary. Unlike the City of Morgantown, the City of Bluefield had a pre-established, publicized, hourly rate of pay, not one which had to be hypothetically calculated at the end of a work year. This Court found that the City of Bluefield's plan was adequate because it incorporated a schedule of hourly rates and because the firefighters were notified in advance of their hourly rates of pay and the hours which they would work. The Court stated:

> We conclude the provisions of our wage and hour law, *W. Va. Code*, 21–5C–3(a), will be satisfied where:
>
> (1) firefighters know in advance their regular hourly rate of pay, their average number of weekly hours to be worked each week, including a definite number of overtime hours over the forty-hour regular workweek, and their total annual salary; and
>
> (2) the forty regular hours when multiplied by the regular rate of pay is combined with the overtime hours scheduled to be worked each week compensated at one and one-half times the regular rate of pay and this sum when annualized equals the stated annual pay.

*Pullano v. City of Bluefield*, 176 W.Va. at 209, 342 S.E.2d at 175.

In examining the case presently under consideration it appears to this Court that

that this insubstantial difference vitiates the technique.

the City of Charleston has based its compensation plan on the formula requirements laid out in the *Pullano* case. An hourly rate is set for firefighters. That hourly rate, when multiplied by forty and added to one and a half times the hourly rate multiplied by sixteen, and then annualized, substantially equals the estimated annual pay. There is evidence in the case that firefighters were informed of the fact that they were to work forty hours regular time per week as well as sixteen overtime hours per week. There is also evidence that firefighters were aware of their hourly rate of pay and their overtime rate of pay and that their overtime rate of pay was equal to one and one-half times their hourly rate of pay. On this point the trial court specifically found:

> The city's annual fiscal Budget and Pay Detail Audit, proposed each fiscal year before the City Council, expressly depict how the fire fighters are to be compensated pursuant to the above-mentioned formula for calculating the hourly rate of pay. The current Pay Detail Audit illustrates how each fireman is paid in practice. The city prepares the audit every two weeks and it shows the amount of money earned by each fireman in a two-week period. This information is contained on each fireman's check voucher (stub). Therefore, each check stub informs the fireman of his hourly rate and overtime rate of pay … In addition, each fireman is made aware, through public council meetings, the Municipal Budget, etc. the hourly rate of pay, the estimated annual salary and the expected workweek hours prior to the beginning of each fiscal year.

After examining the record this Court believes that the circuit court's conclusions are supported by evidence introduced in the case.

After reviewing the procedures followed by the City of Charleston, the Court believes that it has substantially complied with the guidelines set forth in the *Pullano* case for acceptable pay schemes for firefighters and that the circuit court properly ruled in favor of the City of Charleston.

In examining the facts of this case, as well as other cases relating to municipal employees' pay, this Court believes that some confusion arises from the use of annualized pay estimates by municipalities. Under West Virginia law municipalities are required to prepare and submit to the state tax commissioner levy estimates which must include expenditures to be paid out of receipts. *See W.Va.Code*, 11–8–14, especially 11–8–14(4). It would be impossible for municipalities to comply with this law without preparing annual estimates of municipal firefighter's estimated aggregate annual pay. The estimate would not be accurate unless it substantially reflected the firefighter's hourly pay and the estimated hours that the firefighters would work. Because of this, this Court is unwilling to declare a pay scheme violative of our wage and hour laws simply because there is an annual estimate which equals or approximates an hourly wage rate multiplied by hours worked with adjustment for overtime or holiday rates. The real focus is on whether an hourly rate is clearly established before the beginning of a work year, whether that hourly rate is made public, and whether overtime hours are compensated at the appropriate multiple of the hourly rate.

In the *Pullano* case the Court indicated that *W.Va.Code*, 21–5C–3(d)(3), offers a procedure whereby an employer can obtain advance approval of its pay schedule. The Court believes that if this procedure were widely used cases such as the present one could be avoided by having the compensation arrangement approved in advance. The ultimate benefit of such procedure is the avoidance of prolonged and extensive litigation, and this Court believes that it would be salutary for employers to employ the procedure in the future.

For the reasons stated, the judgment of the Circuit Court of Kanawha County is affirmed.

AFFIRMED.