IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

No. 13-1261

FILED

**October 30, 2014**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

September 2014 Term

MYRON BOGGESS and WILLIAM GILL, et al.
Plaintiffs Below, Petitioners

v.

CITY OF CHARLESTON, A WEST VIRGINIA MUNICIPAL
CORPORATION; MATTHEW P. JACKSON, ERIC E. KINDER,
AND VICTOR E. SIGMON, IN THEIR CAPACITY AS
COMMISSIONERS OF THE FIREMEN'S CIVIL SERVICE
COMMISSION OF THE CITY OF CHARLESTON
Defendants Below, Respondents

Appeal from the Circuit Court of Kanawha County
The Honorable James C. Stucky, Judge
Civil Action No. 12-Misc-119

AFFIRMED

Submitted: October 14, 2014
Filed: October 30, 2014

Thomas P. Maroney, Esq.
Patrick K. Maroney, Esq.
Maroney, Williams,
Weaver & Pancake, PLLC
Charleston, West Virginia
Counsel for Petitioners

Thomas V. Flaherty, Esq.
Caleb P. Knight, Esq.
Flaherty Sensabaugh Bonasso, PLLC
Charleston, West Virginia
Counsel for Respondent City

Arden J. Curry, II, Esq.
David K. Schwirian

Pauley Curry, PLLC
Charleston, West Virginia
Counsel for Respondent Commission
and Commissioners, individually

JUSTICE WORKMAN delivered the Opinion of the Court

SYLLABUS BY THE COURT

1. "A circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994).

2. "'"'A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963).' Syllabus Point 1, *Andrick v. Town of Buckhannon*, 187 W.Va. 706, 421 S.E.2d 247 (1992)." Syl. Pt. 1, *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 459 S.E.2d 329 (1995).

3. "Summary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syl. Pt. 2, *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 459 S.E.2d 329 (1995).

4. In the absence of a contractual obligation providing otherwise, a public employer is permitted to unilaterally modify a longstanding policy affecting the rights of employees where notice is provided to such employees and where the modification of policy does not retroactively impair previously earned and vested rights, such as pension benefits.

i

Workman, Justice:

This matter is before the Court upon an appeal by Myron Boggess and William Gill, individually and in their capacities as representatives of 162 firefighters (hereinafter "the petitioners") from an October 7, 2013, order of the Circuit Court of Kanawha County granting summary judgment to the City of Charleston (hereinafter "the City") and a July 9, 2013, order of the Circuit Court of Kanawha County dismissing the Fireman's Civil Service Commission for the City of Charleston (hereinafter "the Commission"). The petitioners challenge the City's method of calculating overtime wages and contend that the circuit court erred in granting summary judgment to the City and dismissing the Commission. Upon thorough review of the arguments, record, and applicable precedent, this Court affirms the orders of the Circuit Court of Kanawha County.

I. Factual and Procedural History

The petitioners are individuals employed by the City as firefighters. The City establishes an annual salary for its firefighters, paid in twenty-six equal installments per year. Overtime compensation is determined by dividing the annual salary by a certain number of hours worked to establish a baseline regular hourly rate of pay.[1] Overtime is then paid at one

---

[1]This calculation is necessary to convert an annual salary into a baseline regular hourly rate to determine a firefighter's applicable overtime rate. Accurate calculation of the baseline regular hourly rate is essential to the determination of what one and one-half times that (continued...)

and one-half times the regular hourly rate after the firefighters work beyond the regular hours. "Kelly days" were also established in 1991.[2] In 1994 and 1997, the City reduced the number of hours per week that the firefighters would work before overtime was required to be paid.[3]

The divisor used in the baseline hourly rate calculation is the primary matter of controversy in this case. From 1991 until 2011, the City calculated its firefighters' baseline hourly rates in a manner consistent with a formula utilized in *Aaron v. City of Wichita*, 797 F. Supp. 898 (D. Kan. 1992) (hereinafter "*Aaron I*"), subtracting Kelly days and vacation days from the total number of hours worked annually. In 2011, however, Charleston City Manager David D. Molgaard reviewed the City's methodology for calculating the baseline hourly rate and determined that it was incorrect and had actually been compensating the firefighters at a higher overtime rate than required. Mr. Molgaard further determined that the United States Court of Appeals for the Tenth Circuit had rejected the

---

[1](...continued)
regular hourly rate is for purposes of paying overtime wages.

[2]A Kelly day is essentially an additional scheduled period of time off. It is typically arranged through a rotating system providing periodic time off. The term "Kelly day" originated in Chicago in 1936 when then Mayor Edward Kelly gave firefighters a day off for every seven days on duty. A common Kelly arrangement is a three-platoon system that works a "24 on/48 off" rotation with a Kelly day every seventh shift.

[3]According to the City, from 1991 to 1995, firefighters received overtime pay after working 51.7 hours per week. From 1995 to 1996, they received overtime pay after working 50.4 hours per week. And from 1997 to the present, they receive overtime pay after working 49 hours per week.

formula being utilized in *Aaron I* through its decision in *Aaron v. City of Witchita*, 54 F.3d 652 (10th Cir. 1995) (hereinafter "*Aaron II*"). The Tenth Circuit held in *Aaron II* that the proper hourly rate is determined by dividing the salary by the total number of hours the annual salary was intended to compensate, without deducting vacation days and Kelly days. 54 F.3d at 656.

Concluding that its previous formula had inappropriately inflated the calculation of the baseline regular hourly rate and had resulted in overpayment of approximately $1.4 million in wages not required under the federal Fair Labor Standards Act (hereinafter "FLSA"), 29 United States Code §§ 201 to 219 (2006), the City amended its mathematical formula by resolution dated November 7, 2011. The City provided the firefighters with notice of the alteration. The resolution modifies the method of calculating overtime compensation and indicates that the City "adopted the Section 207(k) exemption under the [FLSA] and provided that the City would henceforth pay its firefighters premium compensation for any unscheduled time worked in excess of 212 hours within a 28 day period." *See* 29 U.S.C. § 207(k).

Under the modified formula, the baseline regular hourly rate is calculated by dividing the annual salary by 2548, the number of hours each firefighter is to work under the FLSA guidelines prior to what is considered overtime, with anything over forty-nine hours per week deemed as overtime. This modified method of calculation has not reduced the

3

firefighters' annual salaries; it has only altered the mathematical calculation by which the baseline regular hourly rate of pay is determined.[4] Due to the effect upon overtime calculation, the petitioners initiated legal action on November 23, 2011, by filing a petition with the Commission seeking to reinstate the prior baseline regular hourly rate calculation. In that action, the petitioners alleged that the City's November 7, 2011, resolution constituted an improper unilateral change to the method of calculation and that such change resulted in a reduction of overtime pay.

On January 26, 2012, the Commission addressed the issue of whether it had jurisdiction to hear the petitioners' claims, pursuant to West Virginia Code §§ 8-15-11, -25 (2012), dealing with civil service for paid fire departments. According to those provisions, the Commission's jurisdiction is limited to certain defined areas, and it is authorized to hear and rule upon allegations involving the removal, discharge, suspension, or reduction in rank or pay of a firefighter. Because the petitioners had not been the subject of disciplinary action, the Commission found that it lacked jurisdiction to hear the petitioners' claims.

A. City's Request for Declaratory Judgment in Federal Court

---

[4]It is imperative to note that the petitioners do not contend that the City refused to pay one and one-half times the baseline regular hourly rate as overtime compensation; rather, they contend that such rate is now calculated in a manner which differs from the previous method, leading to the one and one-half time figure being lower than the prior calculation using lower divisors. In other words, the lower the divisor, the higher the resulting overtime pay.

On February 2, 2012, the City filed a Request for Declaratory Judgment and Relief in the United States District Court for the Southern District of West Virginia. The City asserted that an actual controversy had arisen under the FLSA regarding the proper methodology for calculating hourly and overtime wages for the petitioners. The City requested declaratory judgment and relief regarding the legality of its methodology under the FLSA.

On May 3, 2012, the petitioners filed a motion to dismiss,. The federal court determined that there was no controversy under the FLSA and therefore dismissed the declaratory judgment action, by order dated September 7, 2012. The court reasoned as follows:

> [I]f the firefighters believed that the new methodology adopted by the City that took effect in 2012 violated the FLSA, they could have brought a claim in federal court. They did not do so; rather, they brought a claim in State court, alleging only violations of State law and [Firemen's Civil Service] Commission rules, and nowhere have the firefighters even suggested that the new methodology violates the FLSA. Thus, there is no controversy as to whether the new methodology satisfies the requirements of the FLSA.

B. Petitioners' Request for Writ of Mandamus Against the Commission and
Petitioners' Civil Action Against the City

On February 24, 2012, the petitioners filed a Complaint and Petition for Writ of Mandamus in the Circuit Court of Kanawha County. The petitioners alleged that the City

should not be permitted to unilaterally alter its method of calculating overtime pay and asserted that the Commission should be compelled to assume jurisdiction in this matter and hold a full evidentiary hearing.[5]

In response, the Commission filed a motion to dismiss, and the circuit court heard arguments regarding the that motion on April 22, 2013. The court found that this Court's decision in *Darlington v. Magnum*, 192 W.Va. 112, 450 S.E.2d 809 (1994), compelled the conclusion that the Commission lacked jurisdiction.[6] Thus, the circuit court held, by order dated July 9, 2013, that the Commission properly concluded that it lacked jurisdiction to hear the petitioners' claims.

The petitioners filed a motion for summary judgment on May 28, 2013, alleging that the City violated its contractual obligations and the FLSA by unilaterally altering the method of calculating overtime pay. The City agreed that this matter was suitable for summary judgment and, on June 14, 2013, converted its previously-filed motion to dismiss to a motion for summary judgment. On June 26, 2013, the parties argued their respective motions for summary judgment before the circuit court. The petitioners asked the

[5]As of May 22, 2012, all proceedings in the Circuit Court of Kanawha County were stayed pending resolution of the matters before the federal court. That stay was lifted after the federal court dismissed the declaratory judgment action by the City.

[6]The *Darlington* case will be discussed in greater detail in a subsequent section of this opinion.

6

circuit court to take judicial notice of certain FLSA statutes that were supportive of their motion. The City objected on the grounds that the petitioners were estopped from litigating alleged violations of the FLSA because they had sought and obtained dismissal of the City's declaratory judgment action in federal court on the basis that no FLSA violations had occurred.[7]

On October 7, 2013, the circuit court granted the City's motion for summary judgment. The petitioners now appeal both the July 9, 2013, dismissal order and the October 7, 2013, summary judgment order to this Court.

## II. Standard of Review

This Court has consistently explained that "[a] circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). Summary judgment is mandated when the record demonstrates that no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *See Powderidge Unit Owners Ass'n v. Highland Props. Ltd.*, 196 W.Va. 692, 474 S.E.2d 872 (1996).

As this Court explained in syllabus points one and two of *Williams v. Precision*

_____

[7]The circuit court did not rule on the City's claim of estoppel and proceeded to an adjudication on the merits.

7

*Coil, Inc.*, 194 W. Va. 52, 459 S.E.2d 329 (1995),

> " 'A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963)." Syllabus Point 1, *Andrick v. Town of Buckhannon,* 187 W.Va. 706, 421 S.E.2d 247 (1992).
>
> Summary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

194 W.Va. at 56, 459 S.E.2d at 333. Based upon these standards, this Court will consider the parties' arguments.

III. Discussion

The petitioners contend that the circuit court erred in affirming the Commission's finding that it lacked jurisdiction and in granting the City's motion for summary judgment. The petitioners present multiple arguments. For purposes of this Court's evaluation of this case, we divide the issues into three primary areas of concern: jurisdiction of the Commission; existence of a contractual obligation and the application of *Collins v. Bridgeport*; and the impact of the FLSA.[8]

---

[8]The petitioners contend that (1) "The Circuit Court erred in finding there was no employment contract[;]" (2) The "Circuit Court erred by not finding that under Fair Labor Standards Act 29 U.S.C. § 201, et seq., an employer cannot unilaterally change the method
(continued...)

8

In response to the petitioners' assertions, the City argues that the July 9, 2013, and October 7, 2013, orders should be affirmed because the Commission correctly dismissed this matter for lack of jurisdiction and the petitioners failed to demonstrate the existence of any genuine issues of material fact with regard to their allegations against the City. The City further contends that it is not contractually obligated to calculate its overtime rate of pay for its firefighters in any particular manner. It asserts that it is not prohibited from altering the terms and conditions of employment of its firefighters. The City also contends that its reliance upon the *Aaron I* and *Aaron II* decisions has no material relevance to the legal issues and that this Court's decision in *Collins v. City of Bridgeport*, 206 W. Va. 467, 525 S.E.2d 658 (1999), controls the outcome of this matter.

A.  Jurisdiction of the Commission

---

[8](...continued)
of determining the mode of the regular rate of hourly pay[;]" (3) The "Circuit Court erred in finding that the City relied on *Aaron v. City of Wichita*[;]*" (4) The "Circuit Court erred in holding that the City could unilaterally modify its employment policies under *Collins v. City of Bridgeport*[;]" and (5) The "Circuit Court erred in finding that firefighters do not have a liberty and property interest and not issuing a writ of mandamus compelling the Civil Service Commission to hold a full hearing."

In addition to those arguments, the petitioners assert various additional assignments of error, regarding the circuit court's findings of fact and conclusions of law on the issues of unilateral alteration of policy; the absence of employment contracts with the City; the method of determining calculation of overtime pay; the City's reliance or lack thereof upon *Aaron v. City of Wichita*; the City's discretionary and historic modification of policy as a matter of fiscal responsibility and public policy; and the failure to observe liberty and property interests.

Pursuant to the provisions of West Virginia Code §§ 8-15-11 and 8-15-25, the jurisdiction of the Commission is limited to certain well-delineated circumstances.[9] The Commission may only hear matters that involve the removal, discharge, suspension, or reduction in rank or pay of any particular affected individual. W.Va. Code §§ 8-15-11, -25. The uncontradicted evidence before the Commission established that none of the petitioners had been removed, discharged, suspended, or had been reduced in rank or pay as a disciplinary action. In evaluating this issue, the Commission addressed this Court's decision in *Darlington*, as referenced above, and properly determined that *Darlington* controlled the issue of the Commission's jurisdiction.

This Court in *Darlington* concisely explained that the language of West Virginia Code § 7-14-17 (1976),[10] related only to *disciplinary proceedings* instituted against deputy sheriffs.

> In this case, the term "reduction in wages" in W.Va.Code, 7-14-17(a) is used as part of a group of disciplinary actions that cannot be taken without affording the deputy sheriff the procedural rights contained in this statute. The action taken by the Commission was not predicated on any disciplinary event, but instead was related to the payment of insurance

[9]The Commission's duties, rights, and responsibilities are statutorily-granted, and it has only those powers that are conferred by statute; it has no inherent jurisdiction. *Pugh v. Policeman's Civil Serv. Comm'n*, 214 W.Va. 498, 590 S.E.2d 691 (2003); *City of Huntington v. Lombardo*, 149 W.Va. 671, 143 S.E.2d 535 (1965).

[10]The provisions of West Virginia Code § 7-14-17 are virtually identical to West Virginia Code § 8-15-25, the provision guiding the Commission in its determination of its jurisdiction in this matter.

10

premiums for health coverage.

192 W.Va. at 114, 450 S.E.2d at 811 (footnote omitted). This Court ultimately held that the actions of the Sheriff's Department in *Darlington* were not based on any *disciplinary* event, but instead were related to payment of insurance premiums for health coverage. The Court held that the deputy sheriffs had no right to have the Civil Service Commission decide their grievance under West Virginia Code § 7-14-17.

Comparing the present case to the *Darlington* situation, the circuit court found that none of the petitioners had been removed, discharged, suspended, or reduced in rank or pay as part of *disciplinary measures* against them. Consequently, the circuit court found that the Commission's conclusion was correct and that the reduction in the overtime pay which results from the City's alteration of policy is completely unrelated to any disciplinary matters.

This Court agrees with the circuit court's conclusion. The rationale of *Darlington* governs this matter, and the City's changes in policy to which the petitioners object did not emanate from any type of disciplinary proceeding which would provide jurisdiction for the Commission to hear the underlying matter. The circuit court's July 9, 2013, dismissal order is affirmed.

B. Existence of Contractual Obligation and Application of *Collins v. Bridgeport*

The petitioners contend that a contractual obligation exists between the City

11

and its firefighters which requires that a particular mathematical formula be utilized for the calculation of the regular hourly rate used in the payment of overtime wages. The petitioners have not presented any individual contracts or collective bargaining agreements as evidence that the City is contractually bound to calculate overtime compensation in a particular manner or using a certain formula. Instead, the petitioners have presented their assertions regarding the existence of an alleged contract by several alternative means. They have characterized the alleged contracts as individual in nature, arguing that each firefighter received the benefit of a contractual relationship when he or she was initially employed by the City. The petitioners have also referred to the alleged contracts as having been negotiated by Local 317 of the International Association of Firefighters, despite the absence of a collective bargaining agreement addressing these issues. Additionally, the petitioners have stated that the alleged contracts are premised upon the longstanding policies of the City, dating back to mutual agreements of 1991,[11] and are not subject to unilateral alteration.

---

[11]This Court recognizes that the enforcement of oral contracts is limited by the application of the statute of frauds, as codified in West Virginia § 55-1-1 (2008). The statute encourages "the reduction to writing of certain types of agreements which are particularly ephemeral of proof, or into which a party is particularly likely to enter in a thoughtless or perfunctory manner." *Thompson v. Stuckey*, 171 W. Va. 483, 485, 300 S.E.2d 295, 297 (1983). The statute provides that "[n]o action shall be brought . . . [u]pon any agreement that is not to be performed within a year; [u]nless the promise, contract, agreement, representation, assurance, or ratification, or some memorandum or note thereof, be in writing and signed by the party to be charged or his agent." W. Va. Code § 55-1-1; *see also Fry Racing Enters., Inc. v. Chapman*, 201 W. Va. 391, 393, 497 S.E.2d 541, 543 (1997) (enforcement of oral contract barred by statute of frauds requirement that contracts not to be performed within one year must be memorialized in some writing or memorandum).

The City offered an affidavit from City Councilman J. Thomas Lane regarding the existence of any contractual obligation owing to the firefighters. In his January 28, 2013, affidavit,[12] Mr. Lane stated as follows:

> Any individual firefighter's contract would have had to have been authorized by a resolution or ordinance adopted by a majority vote of the City Council to be valid, and would have been limited in duration to the then-current budget year, and no resolution or ordinance of this nature has been considered during my tenure.
>
> At no time has the existence of any contract containing an obligation on the part of the City to calculate hourly wages for the City's firefighters according to any particular methodology been brought to my attention or formally discussed, considered or approved by the City Council.

The circuit court reviewed all the evidence submitted by the petitioners, including affidavits, wage progression schedules, committee reports, and station log books. The circuit court, viewing the facts in a light most favorable to the petitioners, found that "no evidence has been offered in support of [the petitioners'] underlying proposition that the City is contractually bound to calculate overtime compensation in a particular manner into perpetuity."[13] The circuit court also rejected the petitioners' suggestion that the City's annual

---

[12]Mr. Lane provided two affidavits in this matter. The first affidavit, dated July 19, 2012, was filed when these matters were pending in the United States District Court for the Southern District of West Virginia. The second affidavit, dated January 28, 2013, was filed in this action in support of the City's Motion to Dismiss.

[13]The divisor used in the formula has changed frequently over the years, but the vacation days and Kelly days were subtracted from the divisor prior to the 2011 resolution.

(continued...)

13

wage progression schedules express a contractual obligation. Those documents are, as the circuit court correctly emphasized, "only indicative of the year-to-year exercise of the City's discretion with regard to the terms and conditions of employment." This Court has thoroughly reviewed the information provided in the record, and we discern no legitimate basis upon which to conclude that the mathematical formula previously used to divide annual salary into hourly wages created a contractual obligation to use that same formula into perpetuity.[14]

Critically, the pivotal issue in this appeal was previously resolved, albeit in slightly different form, by this Court in *Collins.* In that case, the City of Bridgeport had followed a longstanding employment practice of including holiday compensation in the calculation of overtime compensation for its police officers. 206 W.Va. at 475, 525 S.E.2d

---

[13](...continued)
From 1991 through 1995, for instance, the baseline regular hourly rate was calculated by dividing a firefighter's annual salary by 2412 hours for members with less than fifteen years of service and 2364 hours for members with more than fifteen years of service. From 1995 to 1996, those divisors were 2344 and 2296, respectively. From 1997 through 2011, those divisors were 2272 and 2224, respectively.

[14]The City also emphasizes that "[a]dopting [the firefighters'] assertion that the City must forever pay its firefighters in a particular manner not otherwise required by federal or state law would force the City to violate the prohibition against expending money or incurring future obligations in excess of those funds available in the current budget." That result is disallowed by West Virginia Code § 11-8-26 (2013) (providing that a "local fiscal body shall not expend money or incur obligations" in excess of funds available for current expenses); *see also Edwards v. Hylbert*, 146 W.Va. 1, 118 S.E.2d 347 (1960) (holding that no contract is valid which will bind levies of future years, without authority from people).

at 666. After nearly twenty years of using a particular methodology, the city altered its policy such that police officers were not paid at an overtime rate until the actual hours worked exceeded the hours of compensation not worked during the applicable workweek. *Id.* The police officers objected to the new pay rate calculation and specifically argued that the city's longstanding method of calculating overtime compensation and the police officers' reliance on that practice had created a contractual obligation between the city and its police officers that could not be unilaterally modified by the city. *Id.* This Court rejected the police officers' argument, held that a contractual obligation had not been created, and concluded that the city was permitted to unilaterally modify its "long-held policy concerning overtime pay provided it notifies its employees of the change." *Id.* at 476, 525 S.E.2d at 667.

The *Collins* decision is controlling precedent with regard to the City of Charleston's alteration of its method of calculation in the present case, and this Court finds it dispositive. Although the petitioners characterize *Collins* as a misapplication of law and suggest that it should be overturned, we find that *Collins* was premised upon sound reasoning. We decline to abandon its holding that a municipality's past practice relating to calculation of overtime pay does not create a contract; that such calculation could be unilaterally altered, with notice; and that the municipality is permitted to revoke or alter policies. *See id.* at 476, 525 S.E.2d at 667. We explained in *Collins* that we were applying

15

principles established in private-sector cases[15] to the public sector facts, and we specifically

stated that the basic tenets of employment law are applicable in both settings.[16]  This Court

---

[15]*See* Syl. Pt. 4, *Hogue v. Cecil Walker Mach. Co.*, 189 W. Va. 348, 431 S.E.2d 687 (1993) (holding that reasonable notice must be provided when employer modifies or revokes prior personnel manual).  With regard to *Hogue*, this Court reasoned as follows in *Collins*:

> The appellants attempt to distinguish *Hogue* from the instant facts, stating first that *Hogue* is not controlling in the context of public employees.  We disagree.  In the instant case, the appellants have failed to cite a specific statute or regulation that mandates that Bridgeport treat holiday, vacation, or sick pay as time actually worked for the purpose of calculating overtime pay.  In the absence of such a law, Bridgeport, like a private employer, is free to promulgate a policy and subsequently modify that policy as long as employees are given reasonable notice of the modification.

206 W.Va. at 476, 525 S.E.2d at 667.

[16]The petitioners also attempt to evade the precepts of *Collins* by emphasizing their status as civil service employees, rather than at-will employees.  *See W. Va. Dep't. of Env'l. Prot. v. Falquero*, 228 W.Va. 773, 724 S.E.2d 744 (2012).  Although the petitioners are correct in their assertion that firefighters are civil service employees, they exaggerate the implications of that distinction.  While the firefighters' status as civil servants entitles them to certain protections, such as the right to continued employment absent a showing a good cause for termination, their status as civil service employees does not entitle them to benefits of a perceived contractual obligation where no such obligation exists.  *See, e.g., Coday v. City of Springfield*, 939 F.2d 666, 668 (8th Cir. 1991) (holding that provisions protecting classified service employees from administrative demotion or discipline did not preclude reclassification of employees and warning against "misinterpret[ation] of scope" of protections afforded to employees where protections "apply only to administrative actions, such as the promotion or discipline of employees.  They do not limit or preclude the city council's legislative authority to make necessary policy and budget decisions; they do not somehow override the express authority for the city council's actions . . . and, thus, they do not create a constitutionally-protected property interest that prohibits the city council from passing the ordinance at issue in this case."); *see also W. Central Mo. Reg'l. Lodge No. 50 v. Bd. of Police Comm'rs of Kansas City*, 939 S.W.2d 565, 568 (Mo. Ct. App. 1997) (holding, even in context of employee manual, that policy which included agreement to

(continued...)

has reevaluated the legal principles underlying the *Collins* decision. Upon an exhaustive consideration of these principles, we are convinced that these precepts are both sound and solidly-grounded. We observe additionally that other jurisdictions addressing this issue have ruled in a manner consistent with the resolution reached in *Collins*.

In reviewing decisions in the public sector, it is imperative to recognize the discretion of a public employer, such as the City in the present case. As aptly explained in *Figuly v. City of Douglas,* 853 F.Supp. 381 (D. Wyo. 1994), this discretion forms the foundation for evaluation:

> One of the most important characteristics of our democratic form of government is the authority of our elected officials to make changes mandated by the electorate. The ability of incoming officials to change policies, procedures, and even key personnel of their predecessors, allows the incoming officials to implement their own policies, those policies desired by the majority of the public who elected them. To allow a prior government or official to bind his successors by creating contracts or other commitments which extend beyond his term would be contrary to this critical facet of democracy. To be certain, it would be neither practical nor desirable for all government contracts to terminate upon the completion of the term of the officials which made them. Nevertheless, the need

---

[16](...continued) provide annual salary increase of five percent did not constitute contract between city and employees and distinction between at-will employees and public employees was not dispositive in this context); *Swiger v. Civil Serv. Comm'r*, 179 W. Va. 133, 138, 365 S.E.2d 797, 802 (1987) (discussing right to union representation at predisciplinary meeting and recognizing that where civil service laws do not offer specific procedural due process protections in that context, civil service agencies and courts adopt rationale that guarantees public employees same rights as private employees).

> for newly elected officials to effectuate change is an important public policy which cannot be ignored by courts interpreting government contracts.

*Id.* at 384.[17]

In evaluating allegations of contractual obligations formed by actions of public employers, courts have typically focused upon the right of the employer to control its annual budgetary and discretionary functions as well as the absence of an employee's right to the continued existence of a particular means or method of compensation. In *Keeling* v. *City of Grand Junction*, 689 P.2d 679 (Colo. App. 1984), for instance, the court found that an educational incentive pay program for police officers and firefighters did not create a contractual obligation. *Id*. at 680. The Court held that "plaintiffs do not have a vested contractual right in the continuance of a particular rate or method of compensation" and observed that "succeeding city councils are not bound by the legislative acts of their predecessors. . . ." *Id.; see also Schulz v. City of Longmont*, 465 F.3d 433, 443 (10th Cir. 2006) (holding that promises city made to pay annual step increases did not result in contractual obligation and municipalities retain ability to change compensation and benefits provided to employees); *Colo. Springs Fire Fighters Ass'n v. City of Colo. Springs*, 784 P.2d

---

[17]*See also Baker v. Civil Serv. Comm'n*, 161 W.Va. 666, 672, 245 S.E.2d 908, 912 (1978) (observing that "[n]umerous cases in other jurisdictions hold that a legislative body has the power to make changes in its public employment, including the civil service system, which changes result in either abolishing positions or diminishing the economic rights of civil service employees.").

766, 773-74 (Colo. 1989) (finding absence of contractual obligation where ordinance provided for payment of health premiums, stating that "Plaintiffs' interpretation of the 1966 ordinance would impose future liability upon the City by requiring subsequent councils to annually appropriate the funds needed to fund the health premium obligations" and that "establishment and modification of such an employee benefit has traditionally been within the scope of legislative discretion."); *Unterschuetz v. City of Chicago*, 803 N.E.2d 988, 994 (Ill. App. Ct. 2004) (observing that, even within context of actual ordinance declaring policy, "the function of a legislative body is to make laws that declare the policy of a governmental body, which laws are subject to repeal when a subsequent legislature decides to alter that policy" and that City had "simply announce[d] various policies that the City intends to carry out until such time as the city council wishes to change those policies."); *Chicago Patrolmen's Ass'n v. City of Chicago*, 309 N.E.2d 3, 6 (Ill. App. Ct. 1974) (holding that police officials did not have property interest in continuation of longstanding policy of providing officers with step and longevity salary increases); *Foley v. Consol. City of Indianapolis*, 421 N.E.2d 1160, 1161 (Ind. Ct. App. 1981) (discontinuation of college incentive pay program upheld even though employees allegedly worked in reliance on the program); *Beckham v. City of Bowling Green*, 743 S.W.2d 858, 860 (Ky. 1987) (disallowing police officers' attempt to parlay probable cause statutory provisions regarding reduction of salary into prohibitions against city's "right and duty to fix the compensation of its employees based on the resources available to it."); *Watkins v. Josephine County*, 259 P.3d 79, 85-86 (Or. 2011) (holding that no contractual obligation was created and county was not required

19

to refrain from amending personnel benefits resolution, stating that county "never promised the permanence of the disputed benefits. . . ."): *Alston v. City of Camden*, 471 S.E.2d 174, 179 (S.C. 1996) (finding that even where policy was presented in form of ordinance, it did not create employment contract, and city was permitted to reduce fringe benefits. "Even assuming the original employee handbook constituted such a contract, Employees had no reasonable expectation that the terms of the 'contract' would remain unchanged.")

In reviewing the approaches of various courts, an important distinction emerges between challenged actions that involve *retroactive* impairment of vested rights and those actions that simply alter the terms of *future* employment. Where the employer's actions serve as a retroactive impairment of rights, those alterations have been disallowed. In *Yeazell v. Copins*, 402 P.2d 541 (Ariz. 1965), for instance, the Arizona Supreme Court held that a public employee had a vested contractual right to receive pension benefits pursuant to the terms of legislation that existed at the time he entered public employment. *Id*. at 547. The court based this conclusion upon the fact that the pension benefits were a form of deferred compensation, earned immediately upon the performance of services for the public employer. Thus, subsequent alterations of policy could not retroactively impair the rights earned upon prior service. *Id*. at 546.[18] This approach is consistent with the holding of this Court in

---

[18]*See also Sanchez v. City of New Orleans*, 538 So.2d 709, 713-14 (La. 1989) (holding that change in civil service firefighter wage policy was permitted where there was no retroactive impairment or impingement upon collective bargaining contracts between city and
(continued...)

20

syllabus point ten of *Booth v. Sims*, 193 W.Va. 323, 456 S.E.2d 167 (1995), wherein this

Court explained:

> When the legislature structured the state trooper's pension system to allow for retirement before age fifty, the State encouraged state troopers to forego potential employment opportunities today for real pension benefits tomorrow. By promising pension benefits, the State entices employees to remain in the government's employ, and it is the enticement that is at the heart of employees' constitutionally protected contract right after substantial reliance not to have their own pension plan detrimentally altered.

Where, however, a challenged policy alteration does "*not* involve the retroactive impairment of vested rights but [rather] the power to alter the terms of future employment[,]" courts have viewed the situation in markedly different fashion and have generally approved the modification of policy. *Abbott v. City of Tempe*, 630 P.2d 569, 574 (Ct. App. Ariz. 1981) (emphasis supplied). In *Abbott,* the court analyzed *Yeazell* and specifically distinguished it based upon the prospective/retroactive distinction. *Id.* The court ultimately held in *Abbott* that adoption of amendments to a city ordinance decreasing rates of holiday pay and accrual of vacation credits was permitted and prior practice had not created a right "immune from prospective repealing or modifying statutes." *Id.* at 575.

> [T]he courts [addressing the prospective/retroactive distinction] recognized that a vested contractual right to benefits existed only when an employee had already performed services and

---

[18](...continued)
firefighters' union).

earned benefits, the payment of which was to be made at a future date. This same rationale does not apply where a city has merely adopted an ordinance which provides for the payment of certain benefits, and an employee has yet to perform services entitling him to the benefits.

*Id.*

Based upon this Court's comprehensive analysis of the issues presented in this case, we hold that in the absence of a contractual obligation providing otherwise, a public employer is permitted to unilaterally modify a longstanding policy affecting the rights of employees where notice[19] is provided to such employees and where the modification of policy does not retroactively impair previously earned and vested rights, such as pension benefits. Our review of this matter demonstrates that the City lawfully passed the resolution modifying the formula on November 7, 2011, following notice to the firefighters and the public at large. We find that the City complied with the requirements and legal precedent of *Collins*. The modified mathematical formula adopted by the resolution in the present case does not retroactively impair a vested right, and this Court consequently finds that the City was not prohibited from unilaterally modifying the method by which overtime pay was calculated.

For similar reasons, the petitioners' alleged property or liberty interest in the

---

[19]*See Collins*, 206 W.Va. at 476, 525 S.E.2d at 667 (holding that city is permitted to unilaterally modify its "long-held policy concerning overtime pay provided it notifies its employees of the change.").

continued use of a particular mathematical formula also fails. As in this case, the police officers in *Collins* asserted that the City of Bridgeport's previous method of calculation of overtime compensation had created property rights that could not be unilaterally altered. 206 W.Va. at 477, 525 S.E.2d at 668. Responding to that contention, this Court observed that it was unaware of any statutes or local laws which granted a property interest in any certain method of calculation of overtime compensation. The Court explained in *Collins* that "a property interest does not normally arise from policies promulgated solely at the discretion of government officials." *Id.; see also Hartman v. Bd. of Educ*., 194 W.Va. 539, 460 S.E.2d 785 (1995). Further, the Court cited *Hutchison v. City of Huntington*, 198 W. Va. 139, 479 S.E.2d 649 (1996), for the premise that "although the Constitution protects property interests, it does not create them. To decide whether plaintiff had a property interest at stake, we look to see whether some independent source, such as federal, state, or local law, has created an enforceable expectation." *Id.* at 154, 479 S.E.2d at 664. As in *Collins*, the City's policies in the present case regarding the method of calculation of regular hourly rates do not give rise to any property or liberty interests.

## C.  Impact of the FLSA

Although the petitioners did not originally allege any violation of the FLSA and based their arguments on issues of state contract law, they asserted FLSA arguments after the City's declaratory judgment action had been dismissed from federal court. In response, the City contended that the petitioners were estopped from arguing that a controversy existed

23

regarding the City's application of the FLSA in state court after arguing in federal court that no such controversy existed. The circuit court did not rule upon the City's estoppel contentions and proceeded directly to resolution on the merits, granting summary judgment to the City.[20]

The petitioners assert that the circuit court erred by failing to find that the FLSA prevents an employer from unilaterally changing the method of determining the regular rate of pay. A thorough analysis of the petitioners' arguments requires a brief foray into the regulatory framework set forth by the FLSA. The federal act establishes guidelines for determining when an employee is entitled to overtime pay and for computing the amount of overtime pay due. In that vein, the FLSA enunciates minimum requirements for determining a regular hourly rate of pay, as used in the calculation of overtime. *See Walling v. Youngerman-Reynolds Hardwood Co.,* 325 U.S. 419, 424 (1945); *see also Butler v. DirectSat USA, LLC*, 800 F. Supp. 2d 662, 671 (D. Md. 2011) (discussing FLSA's

---

[20]The City has not submitted this issue as a cross-assignment of error, and the circuit court essentially mooted the estoppel argument by ruling for the City on the merits of its summary judgment motion and failing to rule directly on the estoppel issue. This Court notes generally that a primary component of issue preclusion is whether the dismissal in federal court was actually "on the merits." A dismissal for lack of subject-matter jurisdiction is generally not considered to be "on the merits" and therefore does not preclude another claim. *See* 18A Charles A Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4436, n.1 (2d ed. 2002) ("There is little mystery about the res judicata effects of a judgment that dismisses an action for lack of subject-matter or personal jurisdiction or for improper venue. [Federal] Civil Rule 41(b) provides that a dismissal for lack of jurisdiction or improper venue does not operate as an adjudication upon the merits.").

establishment of "minimum requirements"). The FLSA's purpose is to articulate "a national *floor* under which wage protections cannot drop, not to establish absolute uniformity in minimum wage and overtime standards at levels established in the FLSA." *Pacific Merch. Shipping Ass'n v. Aubry*, 918 F.2d 1409, 1425 (9th Cir. 1990).

Section 7(a) of the FLSA[21] ordinarily requires that premium overtime wages be paid after forty hours in a workweek. Section 7(k), however, sets forth a partial overtime exemption for fire protection and law enforcement agencies, as used by the City in the present case. *See* 29 U.S.C. § 207(k).[22] Recognizing the unique type of work performed by

---

[21]*See* 29 U.S.C. § 207(a).

[22]Section 207(k) provides as follows:

(k) Employment by public agency engaged in fire protection or law enforcement activities

No public agency shall be deemed to have violated subsection (a) of this section with respect to the employment of any employee in fire protection activities or any employee in law enforcement activities (including security personnel in correctional institutions) if--

(1) in a work period of 28 consecutive days the employee receives for tours of duty which in the aggregate exceed the lesser of (A) 216 hours, or (B) the average number of hours (as determined by the Secretary pursuant to section 6(c)(3) of the Fair Labor Standards Amendments of 1974) in tours of duty of employees engaged in such activities in work periods of 28 consecutive days in calendar year 1975; or

(2) in the case of such an employee to whom a work period of at least 7 but less than 28 days applies, in his work

(continued...)

25

police officers and firefighters, Congress provided this partial exemption to the FLSA's overtime requirements for public agency employers. *Id.* "Section 207k gives employers of fire protection and law enforcement personnel greater leeway in structuring wage and time calculations." *Lamon v. City of Shawnee,* 972 F.2d 1145, 1153 (10th Cir. 1992).

Reviewing courts have uniformly noted that the effect of the section 207(k) partial exemption is to temper the impact of the FLSA's overtime provisions on public employers by raising the average number of hours law enforcement and fire protection personnel may be required to work without triggering the overtime requirement and accommodating the inherently unpredictable nature of those professions by permitting public employers to adopt work periods longer than one week. *See Wethington v. City of Montgomery*, 935 F.2d 222, 224 (11th Cir. 1991) (holding that in enacting FLSA Amendments of 1974, "Congress recognized that certain jobs are not easily susceptible to the workweek method of wage and time calculations, and therefore provided special

---

[22](...continued)
> period the employee receives for tours of duty which in the aggregate exceed a number of hours which bears the same ratio to the number of consecutive days in his work period as 216 hours (or if lower, the number of hours referred to in clause (B) of paragraph (1)) bears to 28 days,

compensation at a rate not less than one and one-half times the regular rate at which he is employed.

26

calculation methods for some trades, including fire protection and law enforcement.").[23]

Application of the section 207(k) provision is subject to the requirements set forth in 29 C.F.R. § 553.230; if a public agency adopts the 28-day work period in accordance with the exception stated in 29 U.S.C. § 207(k), an employee engaged in fire protection activities may work up to 212 hours per work period before he/she accrues overtime and becomes eligible for overtime compensation paid at one and one-half times the regular rate of pay. Thereafter, and in accordance with 29 C.F.R. § 553.230, for any and all hours worked over the 212-hour threshold, overtime compensation must be calculated and paid.[24]

"Thus under § 7(k) a firefighter's 'overtime' period is calculated based on tours

---

[23]Section 207(k)'s "work period concept was intended to ease the overtime burdens of certain public employers by allowing them to average their employees' duty hours over the designated work period, from seven to twenty-eight days in length." *Avery v. City of Talladega*, 24 F.3d 1337, 1344 (11th Cir. 1994).

[24]Section 553.233 defines the "regular rate" as follows:

> The rules for computing an employee's "regular rate", for purposes of the Act's overtime pay requirements, are set forth in part 778 of this title. These rules are applicable to employees for whom the section 7(k) exemption is claimed when overtime compensation is provided in cash wages. However, wherever the word "workweek" is used in part 778, the words "work period" should be substituted.

*See also Lee v. Coahoma Cnty*, 937 F.2d 220, 224 (5th Cir. 1991) ("However, when Section 778 is used to calculate a § 7(k) employee's regular wage rate, the work period concept is substituted for the term work week. 29 C.F.R. § 553.233.").

of duty in excess of a statutorily defined maximum work period, rather than hours worked

over a 40-hour workweek." *Zumerling v. Devine*, 769 F.2d 745, 747 (Fed. Cir. 1985).

> It is clear that Congress' enactment of § 7(k) reflects two concerns: that firefighters be protected from unfair work schedules and that firefighters' schedules were particularly unsuited to the "hours of work" concept generally applicable in determining hours of overtime. *See, e.g.,* 120 Cong.Rec. 8760 (1974) (Remarks of Senator Williams). In recognition of the complexities involved in determining the hours truly considered as "overtime" for employees whose working periods include both on-duty and standby time, Congress struck a balance. Instead of basing overtime on hours worked above 40 hours a week, as generally calculated under § 7(a), overtime is instead based on tour of duty hours above an administratively-set average. Apparent from the statute is Congress' intent that firefighters were not always to be treated the same as other workers.

*Zumerling*, 769 F.2d at 750.

Where an employee is compensated on a salary basis, his regular hourly rate

is computed "by dividing the salary by the number of hours which the salary is intended to

compensate." 29 C.F.R. § 778.113 (2011); *see also Adams v. Dep't. of Juvenile Justice of*

*City of New York*, 143 F.3d 61, 66 (2d Cir. 1998); *Monahan v. Cnty of Chesterfield, Va.*, 95

F.3d 1263, 1283 (4th Cir. 1996). Regarding whether vacation days and Kelly days are to be

subtracted from the number of regular hours worked, the court in *Aaron II* presents very clear

indication that vacation days and Kelly days are *not* to be subtracted from the divisor. The

court explained that "we believe that 'Kelly days' were simply another form of paid vacation

and, therefore, properly included in hours to be compensated by the regular bi-weekly

28

salary." 54 F.3d at 656.

The petitioners assert that the FLSA contemplates a modification of a prior formula for determining regular hourly rate only upon consent of the employees. In arguing this point, the petitioners quote language contained in section 207(f), rather than section 207(k). That distinction between these two sections is significant. Section 207(k) is specifically designed for the situation encountered in the present case where the firefighters have a designated schedule of number of hours worked within a certain number of days. The City specifically adopted the section 207(k) exemption. Section 207(f), on the contrary, was designed for employment necessitating irregular hours of work, examples of which could include certain types of firefighters, but was *not* designed to apply in a situation where an employee works a "regularly scheduled workweek or whose schedule involves alternating fixed workweeks. . . ." 29 C.F.R. § 778.405. Section 207(f) was similarly not designed to apply to "a situation where the employee works an irregular number of hours according to a predetermined schedule." *Id.* The section 207(k) exemption applies where the employer has adopted a qualifying "work period." *See Barefield v. Village of Winnetka*, 81 F.3d 704, 710 (7th Cir. 1996).

The petitioners' reliance upon language regarding employee consent and the preferability of reducing the agreement to writing in a section 207(f) employment situation is wholly unfounded. In fact, precedent addressing the section 207(k) scenario, as exists in

the present case, specifically holds that a municipality is not "required to obtain the consent of its [employees] before instituting a § 207(k) program." *Lamon,* 972 F.2d at 1153 n.10; *see also Barefield*, 81 F.3d at 710 (holding that employees' approval is not required under Section 207(k) system); *Birdwell v. City of Gadsden*, 970 F.2d 802, 805 (11th Cir. 1992). The *Barefield* court recognized that "Congress specifically rejected a requirement that the exemption would apply only if employees agreed to it." 81 F.3d at 710.

The provisions of 29 U.S.C. § 207(k) authorize a public agency to adopt a 212 hour/28 day work period for purposes of calculating overtime entitlements, and that is precisely what the City did in this case. The FLSA and accompanying regulations do not entitle the petitioners to the relief sought in this case, and the circuit court did not err regarding its application of the FLSA to this matter.[25]

---

[25]The petitioners have also alleged that the City misstated its reliance on *Aaron I* and *Aaron II.* As referenced above, the City apparently believed, until 2011, that the 1992 *Aaron I* ruling prevented any changes in the formula for hourly wage calculation it had used. The City thereafter allegedly reassessed the requirements in light of the 1995 *Aaron II* ruling and determined that it was not required to subtract vacation days and Kelly days from the divisor when dividing annual salary by days worked to arrive at the regular hourly wage. The petitioners raise the point that the City could not have entirely relied upon the 1992 *Aaron I* decision for a policy that pre-dated 1992.

This Court finds that the relevance of the City's reliance, or lack thereof, on the *Aaron* decisions is of little import at this procedural stage. Any discussion regarding the degree to which the City applied or interpreted the *Aaron* decisions is not determinative of the matters decided in the circuit court orders currently on appeal. The legal question of the City's right to unilaterally modify the mathematical formula used in the calculation of hourly pay is not answered by an investigation of the City's prior sentiments with regard to what it believed to be required by *Aaron I;* thus, we find that the circuit court properly disposed of that issue
(continued...)

## IV. Conclusion

In affirming the decisions of the circuit court, this Court observes that despite the multiple arguments presented in this case, the dispositive issue is relatively succinct. The parties differ on the calculation of the number of hours by which to divide the annual salary and whether the formula for such calculation can be unilaterally altered by the City. Although the petitioners argue that the City is prohibited from altering the longstanding policy, the fundamental question is whether any legal principle prevents the City's action. This Court finds that there is no contractual obligation to utilize a particular formula into perpetuity, and neither the act of altering policy nor the resulting formula is prohibited by the FLSA. Thus, this Court affirms the July 9, 2013, and October 7, 2013, orders of the Circuit Court of Kanawha County.[26]

---

[25](...continued)
by finding it irrelevant. The circuit court correctly observed: "This argument is a non sequitur and has no bearing on the question posed in the plaintiff's [petitioners'] Motion for Summary Judgment. . . ."

[26]This decision should not be construed as limiting the rights of the firefighters and the City to negotiate and agree to a particular mathematical formula for the calculation of their overtime benefits through the collective bargaining process. As the FLSA and our precedent recognize, the parties remain free to negotiate for more favorable terms than the minimums provided by the FLSA. This Court has been presented with many variations on the theme of uncertainty of compensation structures in public sector employment. *See, e.g., Joseph M. Pullano v. City of Bluefield*, 176 W.Va. 198, 342 S.E.2d 164 (1986) (finding City of Bluefield's plan adequate because it incorporated schedule of hourly rates and because firefighters were notified in advance of hourly rates); *Local 313, Int'l Assoc. of Firefighters v. City of Morgantown*, 174 W.Va. 122, 323 S.E.2d 604 (1984) (addressing city's adoption of written personnel rules, in the absence of a finding of express agreement as to how lump
(continued...)

Affirmed.

---

[26](...continued)
sum payment would be divided between regular and overtime payments). Throughout these prior appeals, it is apparent that the specific requirements of compensation schemes have not been thoroughly evaluated within the underlying employer-employee relationships. The admonition of this Court in *Ingram v. City of Charleston*, 180 W.Va. 313, 376 S.E.2d 327 (1988), is worth repeating in the present case:

> In the *Pullano* case, the Court indicated that *W.Va. Code*, 21-5C-3(d)(3), offers a procedure whereby an employer can obtain advance approval of its pay schedule. The Court believes that if this procedure were widely used cases such as the present one could be avoided by having the compensation arrangement approved in advance. The ultimate benefit of such procedure is the avoidance of prolonged and extensive litigation, and this Court believes that it would be salutary for employers to employ the procedure in the future.

180 W.Va. at 316, 376 S.E.2d at 330.