407 S.E.2d 384

STATE of West Virginia ex rel. CITY OF WHEELING RETIREES ASSOCIATION, INC., Elinor T. Doyle, a Member, and all Those Similarly Situated, Petitioners,

v.

CITY OF WHEELING, a Municipal Corporation, John W. Lipphart, Clyde A. Thomas, Stella Koerner, Vernon E. Seals, Robert E. Henry, Sr., James J. Gessler, Brent A. Bush, John W. Carenbauer, Thomas J. Baller, its Mayor, and Members of its City Council, Respondents.

No. 20144.

Supreme Court of Appeals of West Virginia.

Submitted June 4, 1991.

Decided July 2, 1991.

Jolyon W. McCamic, McCamic & McCamic, Wheeling, for petitioners.

Paul T. Boos, Kevin A. Stryker, Office of City Solicitor, Wheeling, for respondents.

McHUGH, Justice:

This original proceeding is before the Court upon the petition of the City of Wheeling Retirees Association, Inc., Elinor T. Doyle, and all those similarly situated.

The respondents are the City of Wheeling ("the City"), members of its city council, and its mayor: John W. Lipphart, Clyde A. Thomas, Stella Koerner, Vernon E. Seals, Robert E. Henry, Sr., James J. Gessler, Brent A. Bush, John W. Carenbauer, and Thomas J. Baller.

The petitioners seek a writ of mandamus compelling the respondents to provide certain insurance coverage.

## I

This case calls into question the 1986 amendment to *W.Va.Code*, 8–12–8. Under that statutory provision, municipalities are authorized to provide insurance coverage to regular employees as well as retirees.[1] The original version of *W.Va.Code*, 8–12–8 was enacted in 1969. Pursuant to the 1986 amendment, retirees are now protected from adverse changes in their insurance plans which would possibly be the result of the municipality changing insurance carriers. Specifically, the amendment provides in part: "In the event that a municipality changes insurance carriers, as a condition precedent to any such change, the municipality *shall assure that all retirees, ... are guaranteed acceptance, at the same cost for the same coverage as regular employees of similar age groupings*[.]" (emphasis supplied)

1. *W.Va.Code*, 8–12–8 [1986] provides:

Every municipality shall have plenary power and authority to negotiate for, secure and adopt for the regular employees thereof (other than provisional, temporary, emergency and intermittent employees) who are in employee status with such municipality on and after the effective date of this section and for their spouses and dependents, a policy or policies of group insurance written by a carrier or carriers chartered under the laws of any state and duly licensed to do business in this state and covering life; health; hospital care; surgical or medical diagnosis, care, and treatment; drugs and medicines; remedial care; other medical supplies and services; or any other combination of these; and any other policy or policies of group insurance which in the discretion of the governing body bear a reasonable relationship to the foregoing coverages. The provisions and terms of any such group plan or plans of insurance shall be approved in writing by the insurance commissioner of this state as to form, rate and benefits.

The municipality is hereby authorized and empowered to pay the entire premium cost, or any portion thereof, of said group policy or policies. Whenever the above-described regular employees shall indicate in writing that they have subscribed to any of the aforesaid insurance plans on a group basis and the entire cost thereof is not paid by the municipality, the municipality is hereby authorized and empowered to make periodic premium deductions of the amount of the contribution each such subscribing employee is required to make for such participation from the salary or wage payments due each such subscribing employee as specified in a written assignment furnished to the municipality by each such subscribing employee.

When a participating employee shall retire from his employment, he may, if he so elects, remain a member of the group plan and retain coverage for his spouse and dependents, by paying the entire premium for the coverage involved. Spouses and dependents of any deceased member may remain a member of the group plan by paying the entire premium for the coverage: Provided, That nothing herein shall be construed as prohibiting the municipality from paying a portion or all of the cost of any coverage. *In the event that a municipality changes insurance carriers, as a condition precedent to any such change, the municipality shall assure that all retirees, their spouses and dependents, and the spouses and dependents of any deceased member are guaranteed acceptance, at the same cost for the same coverage as regular employees of similar age groupings, their spouses and dependents.* (emphasis supplied)

The petitioners point out that since 1985, the City has provided health insurance coverage under a group plan with the Health Plan of the Upper Ohio Valley, Inc. ("Health Plan"). Under this plan, *both* regular employees and retirees are covered at the same premium rates, regardless of status or age. From May 1, 1990, through April 30, 1991, the single coverage rate was $99.86 per month and the family coverage rate was $249.66 per month. While the City has paid the premiums for its regular employees, the participating retired employees have paid their own premiums.

On March 14, 1991, the Health Plan notified the City that the monthly renewal rates for May 1, 1991, to April 30, 1992 would be $99.66 per month for single coverage and $249.16 per month for family coverage.

On April 15, 1991, the petitioners were notified by the City that the Health Plan monthly premiums for *retirees* would increase to $123.63 per month for single coverage and $309.07 per month for family coverage. These new rates represent an increase of $23.77 per month for single coverage and $59.41 for family coverage.

The City's solicitor sought the opinion of the State Insurance Commissioner regarding whether the provision contained in *W.Va.Code*, 8–12–8 [1986], concerning changing carriers, applies, where the present carrier or carriers increase their rates. The opinion rendered by the Commissioner is that such provision *only* applies where the municipality *changes* carriers.

## II

The petitioners contend that the phrase in the statute, "[w]hen a participating employee shall retire ... he may ... remain a member of the group plan and retain coverage," is self-evident of the statute's intent that the retiree pays the same premium as that required of a regular employee of the same classification. Moreover, the petitioners contend that the City is overlooking the critical phrase in the statute, *"at the same cost* for the same coverage as regular employees of similar age groupings[.]"* (emphasis supplied)

The City, on the other hand, relies upon the literal language of the statute, maintaining that the same cost/same coverage provision only applies where a condition precedent has occurred, namely, where the City has changed insurance carriers. The City argues that because the legislature did not provide other limitations, such as where the present carrier increases rates, then the same cost/same coverage provision contained in *W.Va.Code*, 8–12–8 [1986] does not apply.

The City further points out that under *W.Va.Code*, 33–25A–28(3) [1977][2] (part of the "Health Maintenance Organization Act"), more than one health maintenance organization operates in Wheeling, the other being Health Guard. The City claims that Health Guard *does* provide the same cost for the same coverage.[3]

2. *W.Va.Code*, 33–25A–28 [1977] provides, in part:

(1) Each employer shall offer no less than once every year to every employee and dependent entitled to receive health care under an existing health benefit plan supported in whole or in part by such employer the opportunity to become enrollees in certified health maintenance organizations which have the capacity to provide basic health services in health maintenance organization service areas in which at least twenty-five such employees reside: Provided, That nothing herein shall require an employer to contribute more on behalf of an employee seeking to enroll in a health maintenance organization than would be contributed on the employee's behalf to the existing health plan.

. . . .

(3) If there is more than one certified health maintenance organization which meets the requirements of subsection (1) of this section and such health maintenance organizations have service areas contemporaneously covering the same twenty-five or more employees, the employer shall offer such employees at least one health maintenance organization which provides health services primarily through staff physicians, or medical groups, or a combination of both; and one health maintenance organization which provides health services through other means.

3. The parties in this case, during oral argument, agreed that by next year, both the Health Plan and Health Guard will be available, and that for the 1991–92 contract year, Health Guard's rates will not make a distinction between retirees and regular employees.

### III

In another context, the "West Virginia Public Employees Retirement Act," *W. Va. Code,* 5–10–1 to 5–10–54, as amended, is a remedial statutory enactment, and is "liberally construed so as to provide a general retirement system for the employees of the state[.]" *W. Va. Code,* 5–10–3a [1961]. *See also Flanigan v. West Virginia Public Employees' Retirement System,* 176 W.Va. 330, 342 S.E.2d 414, 419 (1986).

Similarly, *W. Va. Code,* 8–12–8 [1986], has the purpose of providing group insurance for retirees "at the same cost for the same coverage as regular employees[.]"

Accordingly, *W. Va. Code,* 8–12–8 [1986] is remedial, and should be given a liberal construction. "The policy that a remedial statute should be liberally construed in order to effectuate the remedial purpose for which it was enacted is firmly established." 3 N. Singer, *Sutherland [on] Statutes and Statutory Construction* § 60.01, at 55 (Sands 4th ed. rev. 1986).

As noted previously, the original version of *W. Va. Code,* 8–12–8 was enacted in 1969. The 1986 amendment to that statute specifically addresses the situation of retirees' insurance rates increasing. It is obvious that the intent of the 1986 amendment is to protect retirees from suffering the consequences of rate increases.

The City maintains that the *only* situation in which it is required to provide the same cost for the same coverage is where a municipality *changes* insurance carriers. Consequently, in this situation, where the *present* insurance carrier has increased its rates for one class of insured, the City contends that it is not required to provide the same cost for the same coverage.

In light of the spirit of the statute, however, it is unfathomable that such protection would be provided *only* in the situation where a municipality changes insurance carriers.

It is well established that "[t]hat which is plainly within the spirit, meaning and pur-pose of a remedial statute, though not therein expressed in terms, is as much a part of it as if it were so expressed." Syl. pt. 1, *Hasson v. City of Chester,* 67 W.Va. 278, 67 S.E. 731 (1910). *Accord, Pristavec v. Westfield Insurance Co.,* 184 W.Va. 331, 337, 400 S.E.2d 575, 581 (1990); syl. pt. 1, *State v. Kerns,* 183 W.Va. 130, 394 S.E.2d 532 (1990).

Clearly, *W. Va. Code,* 8–12–8 [1986] does not authorize different premiums for retirees than for regular employees. Rather, the statute requires a municipality to provide "group insurance" to retirees on a same cost/same coverage basis as the municipality does for its regular employees. "Group insurance has been defined as the coverage of several individual persons under *one* comprehensive insurance policy." Syl. pt. 1, *Romano v. New England Mutual Life Insurance Co.,* 178 W.Va. 523, 362 S.E.2d 334 (1987) (emphasis supplied).

This Court is not willing to construe *W. Va. Code,* 8–12–8 [1986] in such a way that injustice or absurdity would result.

It is the duty of a court to construe a statute according to its true intent, and give to it such construction as will uphold the law and further justice. It is as well the duty of a court to disregard a construction, though apparently warranted by the literal sense of the words in a statute, when such construction would lead to injustice and absurdity.

Syl. pt. 2, *Click v. Click,* 98 W.Va. 419, 127 S.E. 194 (1925). *See also State ex rel. Simpkins v. Harvey,* 172 W.Va. 312, 320, 305 S.E.2d 268, 277 (1983).

A general consideration of *W. Va. Code,* 8–12–8 [1986] makes it abundantly clear that the retirees in this case are to be entitled to the same cost for the same insurance coverage as that of the regular employees. *See* syl. pt. 1, *Parkins v. Londeree,* 146 W.Va. 1051, 124 S.E.2d 471

# 384

(1962) ("In the construction of a legislative enactment, the intention of the legislature is to be determined, not from any single part, provision, section, sentence, phrase or word, but rather from a *general consideration* of the act or statute in its entirety." (emphasis supplied))[4]

Accordingly, we hold that *W.Va.Code*, 8–12–8 [1986] provides, in part, that "[i]n the event that a municipality changes insurance carriers, as a condition precedent to any such change, the municipality shall assure that all retirees, ... are guaranteed acceptance, at the same cost for the same coverage as regular employees of similar age groupings[.]" However, because *W.Va.Code*, 8–12–8 [1986] is remedial, and, therefore, to be liberally construed, even though the municipality does not change insurance carriers, retirees who are insured under the provisions of this section are to be insured at the same cost for the same coverage as regular employees of similar age groupings where the present insurance carrier changes its rates and such change results in retirees being charged different rates for the same coverage as regular employees.[5]

Consistent with the foregoing, the petitioners' request for a writ of mandamus in this case is granted.

Writ granted.

---

**4.** ·The City also maintains that mandamus is not a proper remedy in this case inasmuch as it is not the City that establishes the premiums, but the present insurance carrier that does so. We do not agree. As we have held in this opinion, *W.Va.Code*, 8–12–8 [1986] does not authorize insurance rates for retirees that are different from those for regular employees under a group plan pursuant to this statute. The statute states that "the *municipality* shall assure that all retirees, ... are guaranteed acceptance, at the same cost for the same coverage as regular employees[.]" Accordingly, the duty to provide the "same cost for the same coverage" is on the City in this case.

**5.** In light of our holding, we need not address the petitioners' contention that the City's refusal to provide insurance at the same cost for the same coverage violates equal protection principles.