# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Herschel Marshall,**
**Plaintiff Below, Petitioner**

**vs.)  No. 19-0973** (Cabell County 17-C-154)

**The City of Huntington, a municipal corporation,**
**and Steve Williams, Mayor,**
**Defendants Below, Respondents**

**FILED**
**December 7, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Herschel Marshall, by counsel Bert Ketchum, appeals the Circuit Court of Cabell County's October 31, 2019, order granting summary judgment to respondents. Respondents the City of Huntington, a municipal corporation, and Steve Williams, Mayor of the City of Huntington, by counsel, Ancil Ramey, filed a response to which petitioner submitted a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner worked for twenty-four years as a firefighter for the City of Huntington ("City") before retiring on October 20, 2000. During his tenure as a firefighter, the City and the International Association of Firefighters Local Union 289 ("the Union") entered into a Collective Bargaining Agreement ("CBA") that went into effect on November 1, 1999, and terminated on December 31, 2003. Under that CBA, "[t]he firefighter upon retirement will have the option to participate in any or all available health benefits and choose family or individual coverage." When petitioner retired, he executed the City's "Agreement for Continuation of Health Insurance" pursuant to the CBA. The CBA provides, in part, as follows:

a. Article X, Section 7.  Hospitalization:

The City shall maintain and pay the applicable cost of a family/single medical insurance plan, comparable to the plan presently in existence and in conformity with *Article X, Section 11* and any increased costs to the City of said plan while this Contract is in effect.

1

b. <u>Article X, Section 9. Prescription and Eye Care Programs:</u>

The City shall maintain prescription and eye care programs comparable to the present coverage and benefit levels and in conformity with *Article X, Section 11* of the CBA and will pay any increased costs to the City while this Contract is in effect.

<u>Article X, Section 10. Retirement Health Benefits:</u>

(A) Upon retirement, any and all sick time accumulated and not converted to additional vacation time (pay out) may be converted towards a 40% reduction of premium paid by the retired firefighter for Major Medical, prescription care, eye care and any additional benefits added in the future. Reduction of said premiums may continue for up to 10 years or until accumulated sick time is exhausted, whichever comes first. The firefighter upon retirement will have the option to participate in any or all available health benefits and choose family or individual coverage.

<u>Article X, Section 11. Cooperation for Cost Efficient Benefits:</u>

In an effort to provide cost efficient options or changes in health and major medical plan, including, but not limited, health, major medical plan, prescription drug plan and eye care plan, including but not limited to, co-pays, deductibles and premiums, etc. the Union agrees to meet with the City to negotiate said modifications for its members.

The Union agrees to accept the following changes in insurance coverage should the City agree to said changes for all city employees:

(1) Up to, but not exceeding co-pays on prescription drugs . . . .
(2) Prescription drug reimbursement will be removed from the medical insurance.
(3) Use of a "Preferred Provider Option" in medical insurance coverage.
(4) A $150.00 monthly co-pay stop loss per individual shall apply to the prescription coverage.
(5) The City will maintain a mail order prescription service . . . .
(6) The City shall provide an open enrollment period of not less than ninety (90) days for fire department retirees/pension beneficiaries who are not currently enrolled in the prescription drug program. Retirees . . . with a monthly pension of less than $750.00 and with an annual income of less than $12,000.00 shall be entitled to enroll in the prescription drug program without monthly premium costs. All co-pays, deductibles and other costs of the program remain applicable.
(7) The City shall permit hardships and special circumstances regarding prescription insurance to be appealed to the Insurance Appeals Board of the City.

According to petitioner, it is undisputed that he received the retirement health benefits he elected until the City unilaterally and substantially changed the health insurance plan on April 1, 2017.[1]

On March 7, 2017, petitioner filed a complaint for declaratory judgment asserting five claims: (1) the City would be breaching its contractual obligations under the CBA that was in force when he retired in August of 2000 by making changes to his retiree health insurance benefits effective on April 1, 2017; (2) the changes to petitioner's retiree health insurance benefits would violate West Virginia Code § 8-12-8; (3) the changes to his retiree health insurance benefits would constitute an impairment of his contractual rights in violation of Article III, Section 4 of the West Virginia Constitution; (4) the changes to his retiree health insurance benefits would violate his right to due process in violation of Article III, Section 10 of the West Virginia Constitution; and (5) the changes to his retiree health insurance benefits would violate his right to equal protection in violation of Article III, Section 10 of the West Virginia Constitution.[2]

Petitioner filed a motion for summary judgment, attaching a "Wage and Benefit Agreement Between the City . . . and the International Association of Firefighters Local Union 289," the CBA. That CBA was in effect when petitioner retired in 2000 but undisputedly expired on December 31, 2003. The CBA provides, in relevant part, that "[t]he City shall maintain and pay the applicable cost of a family/single medical insurance plan, comparable to the plan presently in existence and in conformity with Article X, Section 11 and any increased costs to the City of said plan while this contract is in effect." With regard to the eyecare program, the CBA provides that "[t]he City will maintain prescription and eye care programs comparable to the present coverage and benefit levels and in conformity with Article X, Section 11 and will pay any increased costs to the City while this contract is in effect." According to the circuit court, there is no evidence in the record regarding the health insurance benefits or eye care programs in effect at the time of petitioner's retirement in 2000. The CBA further addressed "RETIREMENT HEALTH BENEFITS" by providing that during the term of the CBA, (1) retirees could convert accumulated vacation and sick leave towards

---

[1]Petitioner alleges that under Super Blue Plus 2010, the benefit plan enacted in 2017: "a. changed [his] major medical/hospitalization insurance coverages, prescription drug coverages and optical insurance coverages; b. increased [his] Premium payments to $285.00 per month for major medical coverage; c. increased [his] Deductibles to $2,000.00 per individual/$4,000.00 collectively for major medical and hospitalization in-network; d. increased [his] Co-Insurance payment to $2,000.00 per individual/$4,000.00 collectively for major medical and hospitalization in-network; e. increased [his] Out-of-Pocket expenses to $6,850.00 individual/$13,700.00 collectively for major medical and hospitalization in-network; and f. increased [his] Prescription Drug costs for generic, formulary, non-formulary and specialty brands." He further asserts that based on his life expectancy, his lifetime costs will increase from $554,615 to $993,234 on a net value basis. He does not, however, provide information regarding what these costs/expenses were prior to the change.

[2] On April 1, 2017, the City switched its retirement health plan to Blue Cross Blue Shield Health Care Benefits. Petitioner asserts that this change resulted in substantial and material changes to his retirement health benefits, including increased costs and reduced benefits. He argues that that change materially breached the 1999 CBA, depriving him of his vested retirement health benefits.

a premium reduction "for Major Medical, prescription card, eye care and any additional benefits added in the future"; and (2) the City would fund a "Fire Department Retiree's Insurance Fund Settlement," which was expressly limited to "the life of the agreement." The circuit court found that at the time the CBA was executed, petitioner's Union and the City had not reached a meeting of the minds but were still negotiating changes to the health insurance plans:

> In an effort to provide cost effective options or changes in health and major medical plan, including but not limited to, health, major medical plan, prescription drug plan and eye care plan, including but not limited to, co-pays, deductibles and premiums, etc. The Union agrees to meet with the City to negotiate said modifications for its members. The Union agrees to accept the following changes in insurance coverage should the City agree to said changes for all city employees.

Petitioner argued below, and stated in an affidavit, that "[a]lthough the CBA expired on or about December 31, 2003, the agreements in the CBA relating to [his] retirement health benefits are still binding on the City." The circuit court found that petitioner's affidavit "does [not] identify what his health insurance benefits were in 2000 when he retired." However, an affidavit from Sherry Lewis, The Human Resources Director of the City, provides that "[a]s of the effective date of [petitioner's] retirement, no CBA or other separate contract had been executed between the City . . . and [the Union] setting the terms and conditions of the health, major medical, prescription, and eye care plans for active and retired member of the [Union] or their spouses and/or dependents." She further set forth in her affidavit that

> [d]uring the time period the 1999 CBA was in effect, several changes to the terms and conditions of the health, major medical, prescription, and eye care plans for active and retired members of the [Union] or their spouses and/or dependents were implemented by the City . . . . After the time period the 1999 CBA was in effect, several changes to the terms and conditions of the health, major medical, prescription, and eye care plans for active and retired members of the [Union] or their spouses and/or dependents were implemented by the City . . . . These changes were implemented by the City [] in the exercise of its right to provide whatever fringe benefits it chose to provide to its employees and retirees, including [petitioner] and his fellow retired [Union] members.

According to Ms. Lewis's affidavit, the CBA did not address the amount of premiums to be paid by retirees for health, major medical, prescription, or eye coverage; the amount of co-pays to be paid by retirees for health, major medical, prescription, or eye coverage; the amount of deductibles to be paid by retirees for health, major medical, prescription, or eye coverage; or the scope of major medical, prescription drug, or optical coverage. Her affidavit also addressed specific portions of petitioner's complaint and/or affidavit asserting claims for coverage, pointing out that there was no record evidence that any of those terms existed during the term of the CBA or at the time of petitioner's retirement. Finally, her affidavit provides that "[d]uring 2017, the City . . . resolved any disputes with its active police officers, retired police officers, and active firefighters regarding the City[]'s exercise of its right to provide whatever fringe benefits it chooses to provide to its employees and retirees," leaving petitioner as the only litigant challenging the changes implemented by the City in 2017.

4

In its June 7, 2019, order, the circuit court found that there is no dispute regarding petitioner's use of accumulated sick and vacation time, the supplemental insurance fund, or his election upon retirement to participate in any and all available health benefits and choose family or individual coverage available to him at the time of his retirement. It further found that at the time the CBA was executed and when petitioner retired, the City's obligation to maintain and pay "comparable" plans was subject to continued negotiations between the Union and the City. It specifically found that petitioner's argument in his summary judgment motion that "'[t]he CBA also does not permit the City or Union to bargain away a retired firefighter's elected retirement benefits,' is unavailing where to maintain a cause of action for breach of contract, he is required to identify the terms of the contract at the time of its formation." The circuit court further determined that

> the only agreement between the City and the Union in the CBA was to continue to negotiate and there is no record evidence that there was any meeting of the minds regarding any health insurance benefits with the terms sought to be imposed on the City by [petitioner]; indeed, [the] only record evidence is that those terms did not exist either during the CBA or at the time of [petitioner's] retirement. The record indicates [that petitioner] received health insurance benefits from the City while the CBA was in effect, but any details or terms related to these benefits and whether they were incorporated into the CBA are not part of the record. Thus, the [c]ourt concludes that a question of fact exists with regard to whether the changes to [petitioner's] health insurance benefits in 2017 violated contractual obligations by the City . . . to [petitioner], precluding summary judgment in favor of [petitioner].

The circuit court also found that West Virginia Code § 8-12-8 permits, but does not require, municipalities to provide health insurance to its employees or retirees; and that statute also permits, but does not require, municipalities to pay all or any portion of health insurance premiums for its employees or retirees. In further considering the statute, the court found that when a municipality provides group insurance for its employees, it must permit retirees to remain members of the group insurance plan if the retirees elect to do so and pay the premium for coverage. The circuit court also concluded that "should W. Va. Code § 8-12-8 apply to the group policy at issue here, [petitioner] has not produced evidence showing that the benefits he now receives are inconsistent with the statute's requirement. Thus, [petitioner] has failed to establish he is entitled to summary judgment on this point." The circuit court denied petitioner's motion for summary judgment.

Petitioner then filed a motion to alter or amend that judgment. In its October 1, 2019, order denying that motion, the circuit court concluded that neither Rule 59(e) nor Rule 60(b) of the West Virginia Rules of Civil Procedure were applicable to the motion. After finding that its prior findings were supported by the evidence presented following the close of discovery and by applicable law, the circuit court addressed a number of factual assertions made by petitioner in his motion that were disputed by the circuit court's June 7, 2019, order. The circuit court also pointed out inconsistencies between petitioner's counsel's arguments and the substance of petitioner's affidavit. The circuit court further found that

the findings of fact in [its o]rder were not only supported by the evidence, the evidence was undisputed relative to all matters material to the legal issues involved, and the conclusions of law in [the court's o]rder were well-supported by the applicable law. . . . [T]here is no genuine issue of material fact regarding [petitioner's] lack of entitlement to judgment as a matter of law relative to his claims of breach of contract or unilateral modification of long-standing policies without notice where it is undisputed that pre-modification notice was provided and no previously-earned, vested, and fixed rights in any specific retiree health care benefits were retroactively impaired.

Respondents filed a motion for summary judgment, and the circuit court granted that motion in its final judgment order, also entered on October 1, 2019. The circuit court incorporated by reference its findings of fact from its June 7, 2019, order and its October 1, 2019, order denying petitioner's motion to alter or amend that June 7, 2019, judgment. It found that the 1999 CBA did not obligate the City to do anything for the Union's members relative to the health insurance benefits, including members who retired during its term, beyond the three years it was in effect. The circuit court also found that effective April 1, 2017, changes were made to the City's health plans that included increases in cost-sharing requirements and copayments, causing the plans to lose their status as grandfathered health plans as of April 1, 2017. Finally, it held that

[a]n order reinstating the City's health plans to terms that were in effect prior to April 1, 2017, would cause the plans not to comply with the ACA, exposing the City to governmental enforcement action and monetary penalties under the ACA, which is an additional reason in support of the legislative grant to West Virginia municipalities to adopt, modify, and change health insurance plans is 'plenary.' . . . [T]here is no genuine issue of material fact regarding [respondents'] entitlement to judgment on a matter of law finding that those changes violated no constitutional, statutory, or common law rights of those retirees.

It, therefore, granted respondents' motion for summary judgment by order entered on October 1, 2019. Petitioner appeals from those orders.

Initially, we note that "[a] circuit court's entry of a declaratory judgment is reviewed *de novo*." *Gastar Exploration Inc. v. Rine*, 239 W. Va. 792, 798, 806 S.E.2d 448, 454 (2017) (footnote omitted). Further, "[a] circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). In conducting our de novo review, we apply the same standard for granting summary judgment that is applied by the circuit court. Under that standard,

"'[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963)." Syllabus Point 1, *Andrick v. Town of Buckhannon*, 187 W.Va. 706, 421 S.E.2d 247 (1992).

*Painter*, 192 W. Va. at 190, 451 S.E.2d at 756, syl. pt. 2. In other words,

> [s]ummary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

*Id.* at 190, 451 S.E.2d at 756, syl. pt. 4. Additionally, we note that "[t]he circuit court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but it is to determine whether there is a genuine issue for trial." *Id.* at 190, 451 S.E.2d at 756, syl. pt. 3. Finally, we note that "the party opposing summary judgment must satisfy the burden of proof by offering more than a mere 'scintilla of evidence' and must produce evidence sufficient for a reasonable jury to find in a nonmoving party's favor. *Anderson [v. Liberty Lobby, Inc.]*, 477 U.S. [242,] 252, 106 S.Ct. [2505,] 2512, 91 L.E.2d [202] at 214 [1986]." *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 60, 459 S.E.2d 329, 337 (1995).

On appeal, petitioner sets forth three assignments of error. First, he contends that the circuit court erred in granting summary judgment to respondents by finding that the City's unilateral change to petitioner's retirement health insurance benefits did not breach the collective bargaining agreement between the City and The International Association of Firefighters, Local Union 289. In support of this argument, petitioner asserts that the terms of the 1999 CBA contractually obligated the City and its firefighters during the contractual period of November 1, 1999, to December 31, 2003. He contends that the CBA "covered" active firefighters and firefighters who retired while the CBA was in force between those dates. Without citing any law, petitioner argues that a firefighter who retired during the CBA's contractual period became vested in the retiree benefits if he/she elected continuation of the City's health care benefits available at the time of retirement as long as the retiree elected on the "Agreement for Continuation of Health Insurance" provided by the City. He asserts, however, that the January 27, 2017, memorandum from the City to petitioner notified him that the new benefit plan would "materially modify" petitioner's retirement health insurance benefits. He argues that the changes constituted a material breach of the CBA because they deprived petitioner of his vested retirement benefits granted under the CBA.

As this Court has found,

> [i]n the absence of a contractual obligation providing otherwise, a public employer is permitted to unilaterally modify a longstanding policy affecting the rights of employees where notice is provided to such employees and where the modification of policy does not retroactively impair previously earned and vested rights, such as pension benefits.

Syl. Pt. 4, *Boggess v. City of Charleston*, 234 W. Va. 366, 765 S.E.2d 255 (2014). As the circuit court noted, "[a]t the time the CBA was executed and at the time [petitioner] retired, the City's obligation to maintain and pay 'comparable' plans was subject to continued negotiations between the Union and the City." The circuit court further found that, in 1999, the City and the Union

never reached an agreement on the terms of active or retiree firefighters health insurance benefits, but merely agreed to continue to negotiate; [] there is no record evidence of any post-execution of the 1999 CBA as to the terms of active or retiree health insurance benefits that would have been in effect when [petitioner] retired; and [] there is nothing in the CBA which provided that 'the same levels that existed prior to April 1, 2017,' which was eighteen years later, would somehow be incorporated into a 1999 CBA.

In addition, West Virginia Code § 8-12-8 provides plenary power and authority to municipalities to negotiate for a policy or policies of group insurance written by a carrier or carriers.[3] Respondents argue that the record evidence is undisputed that at the time of the 1999

---

[3] West Virginia Code § 8-12-8 provides as follows:

Every municipality shall have plenary power and authority to negotiate for, secure and adopt for the regular employees thereof (other than provisional, temporary, emergency and intermittent employees) who are in employee status with such municipality on and after the effective date of this section and for their spouses and dependents, a policy or policies of group insurance written by a carrier or carriers chartered under the laws of any state and duly licensed to do business in this state and covering life; health; hospital care; surgical or medical diagnosis, care, and treatment; drugs and medicines; remedial care; other medical supplies and services; or any other combination of these; and any other policy or policies of group insurance which in the discretion of the governing body bear a reasonable relationship to the foregoing coverages. The provisions and terms of any such group plan or plans of insurance shall be approved in writing by the insurance commissioner of this state as to form, rate and benefits.

The municipality is hereby authorized and empowered to pay the entire premium cost, or any portion thereof, of said group policy or policies. Whenever the above-described regular employees shall indicate in writing that they have subscribed to any of the aforesaid insurance plans on a group basis and the entire cost thereof is not paid by the municipality, the municipality is hereby authorized and empowered to make periodic premium deductions of the amount of the contribution each such subscribing employee is required to make for such participation from the salary or wage payments due each such subscribing employee as specified in a written assignment furnished to the municipality by each such subscribing employee.

When a participating employee shall retire from his employment, he may, if he so elects, remain a member of the group plan and retain coverage for his spouse and dependents, by paying the entire premium for the coverage involved. Spouses and dependents of any deceased member may remain a member of the group plan by paying the entire premium for the coverage: Provided, That nothing herein shall be construed as prohibiting the municipality from paying a portion or all of the cost of any coverage. In the event that a municipality changes insurance carriers, as a condition precedent to any such change, the municipality shall assure that all retirees, their spouses and dependents, and the spouses and dependents of any deceased member are guaranteed acceptance, at the same cost for the same

8

CBA and petitioner's retirement, the City had no policy (or policies of group insurance) written by a carrier chartered under the laws of any state and duly licensed to do business in West Virginia covering life; health; hospital care; surgical or medical diagnosis, care, and treatment; drugs and medicines; remedial care; other medical supplies and services; or any other combination of these based on "similar age groupings." Therefore, under the statute, the City had the right, in the absence of a written contract, to modify those fringe benefit programs.

In *Summers v. West Virginia Consolidated Public Retirement Board*, 217 W. Va. 399, 405, 618 S.E.2d 408, 414 (2005), this Court found that

> *Booth* [*v. Sims*, 193 W. Va. 323, 456 S.E.2d 167 (1995)] concerned substantive amendments to existing provisions governing the state troopers' pension system such as an increase in the monthly payroll deduction from state troopers' salaries; a prohibition on the troopers' use of accumulated but unused annual and sick leave as credit toward years of service in determining eligibility for retirement benefits; and a reduction in the public safety retirement annual cost of living adjustment. In other words, promises of future benefits were actually altered. In contrast, in the instant case the Teacher Retirement System pension plan never contained a provision permitting the inclusion of lump-sum vacation pay in employees' final year salary calculations for the purpose of determining retirement benefits. Thus, unlike in *Booth,* the Teachers' Retirement System had not made a promise on which the teachers had relied. Therefore, the detrimental reliance principle set forth in *Booth* is not applicable to the present facts.

Respondents argue that, like *Summers*, in the instant action the City never entered into a contractual relationship with petitioner in which it agreed to provide any specific level of fringe benefits in the form of health, major medical, prescription, and/or eye care plans. We agree. At no point did the City guarantee that it would be able to provide the same insurance benefits from 1999 until the death of both petitioner and his spouse. Neither petitioner nor his spouse were deemed ineligible to participate in the insurance benefits provided to both active and retired employees. Instead, the co-pays and similar portions of the insurance benefits were changed for petitioner and all individuals similarly situated. For these reasons, we find that the circuit court did not err in finding that the City did not breach any contract with petitioner by making changes to the substance of petitioner's health, major medical, prescription, and/or eye care plans.

In his second assignment of error, petitioner asserts that the City's unilateral changes to his retirement health insurance benefits violated a longstanding policy that substantially and materially affects petitioner's rights to those benefits. Petitioner argues that because he executed the Agreement for Continuation of Health Insurance on October 20, 2000, he became vested in the benefits bargained for in the CBA upon retirement. He then received those benefits for seventeen years, in conformity with that agreement, until the City unilaterally changed those benefits without input from petitioner or the Union. Petitioner contends that even if this Court finds that the unilateral changes did not breach the CBA, he is still entitled to relief because West Virginia law

coverage as regular employees of similar age groupings, their spouses and dependents.

9

provides that a public employer is not permitted to unilaterally modify a longstanding policy affecting the rights of employees, even if they are not retired, when the modification of the policy retroactively impairs previously earned and vested rights. Petitioner bases his argument on *Boggess*, including syllabus point 4 as set forth above. Petitioner asserts it is undisputed that he provided substantial service to the City as a firefighter or that he elected to continue health insurance upon retirement under the CBA.

Respondents do not appear to dispute the fact that petitioner provided substantial service to the City as a firefighter for over twenty years. However, respondents argue that *Boggess* undermines petitioner's alternative theory of recovery, as he conceded in his motion for summary judgment that there is no dispute that notice was given. In addition, as the circuit court discussed, petitioner had no vested right to benefits in place on March 31, 2017, under a 1999 CBA that expressly reserved the terms of any retiree health insurance benefits to be provided that expired in 2003. Citing a litany of out of state authority, respondents assert that other courts have held that retired firefighters, police officers, and other public employees have no vested rights to unchanged healthcare benefits, which is what the circuit court found below. For many of the same reasons addressed in petitioner's first assignment of error, we find that the circuit court did not err in finding that the City was "permitted to unilaterally modify a longstanding policy affecting the rights of employees where notice is provided to such employees and where the modification of policy does not retroactively impair previously earned and vested rights, such as pension benefits." Syl. Pt. 4, in part, *Boggess* at 368, 765 S.E.2d at 257.

Finally, petitioner argues that West Virginia Code § 8-12-8 does not grant municipalities the authority to unilaterally change the terms of a collective bargaining agreement that provides for retirement health insurance benefits. He argues that nothing in that statute "prevents a municipality from contractually providing retirees with better and less costly benefits than required under W. Va. Code § 8-12-8" and that nothing in the statute allows the City to unilaterally change a retiree's health insurance benefits that the City contractually obligated itself to provide in the CBA. Petitioner asserts that under the CBA there would be no future reduced benefits or increased costs to him. He continues to argue that it is clear he had contractual property rights under the CBA and that such rights cannot be impaired or diminished by the City. Petitioner further contends that the circuit court was "plainly wrong in finding that W. Va. Code § 8-12-8 allows the City to impair the vested property rights of [petitioner], a retired employee, which are provided by the 1999 CBA."

As addressed above, West Virginia Code § 8-12-8 provides plenary power and authority to municipalities to negotiate for a policy or policies of group insurance written by a carrier or carriers. Respondents criticize petitioner's reliance on *State ex rel. City of Wheeling Retirees Association, Inc. v. City of Wheeling*, 185 W. Va. 380, 407 S.E.2d 384 (1991). As this Court set forth in the syllabus of that case:

> *W.Va. Code,* 8-12-8 [1986] provides, in part, that "[i]n the event that a municipality changes insurance carriers, as a condition precedent to any such change, the municipality shall assure that all retirees, . . . are guaranteed acceptance, at the same cost for the same coverage as regular employees of similar age groupings[.]" However, because *W.Va. Code,* 8-12-8 [1986] is remedial, and,

therefore, to be liberally construed, even though the municipality does not change insurance carriers, retirees who are insured under the provisions of this section are to be insured at the same cost for the same coverage as regular employees of similar age groupings where the present insurance carrier changes its rates and such change results in retirees being charged different rates for the same coverage as regular employees.

Respondents argue, therefore, that all that was required of the City when it changed its health insurance benefits in 2017 was that all retirees, including petitioner, be offered the same benefits as one another. Respondents conclude that because that was done, none of the retirees' rights were violated. Again, we agree with respondents. Petitioner is being afforded the same benefits that are being offered to other retirees. Therefore, under § 8-12-8, the City had the right, in the absence of a written contract, to modify the health insurance benefits offered to its retirees, including petitioner. For these reasons, we affirm the circuit court's grant of summary judgment to petitioner.

Affirmed.

**ISSUED:** December 7, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

**DISSENTING:**

Justice Margaret L. Workman

Justice Workman would set for oral argument in accordance with Rule 19 of the West Virginia Rules of Appellate Procedure.

11