No. 22-ICA-122 – *In Re: Petition of D.K. for Expungement of Record*

**FILED**

**August 7, 2023**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

SCARR, J., dissenting:

I respectfully dissent from the majority's decision to affirm the August 12, 2022, order of the Circuit Court of Randolph County denying D.K.'s petition for expungement of his criminal offense of possession with intent to deliver. In 2013, D.K. was indicted for three criminal offenses: (1) possession with intent to deliver a controlled substance (marijuana); (2) carrying a deadly weapon; and (3) improper vehicle registration. On May 12, 2014, D.K. entered into a plea agreement where he agreed to plead guilty to the improper vehicle registration charge, and the State agreed to dismiss his deadly weapon charge. Simultaneously, D.K. also pled guilty to the possession charge and entered into a pretrial diversion agreement ("PDA") which allowed for the potential, future dismissal of his possession charge, if, and only if, he satisfied certain, specific requirements for a two-year time period.

After successfully completing his PDA in 2016, D.K. filed for dismissal of his possession charge in 2021, which was obviously seven years after his 2014 guilty plea for improper vehicle registration. The circuit court granted dismissal of the possession charge in March 2022 and applied the dismissal *nunc pro tunc* to 2016.[1] Shortly thereafter, in April of 2022, D.K. filed to expunge his possession charge. West Virginia Code § 61-11-25(a) (2012) provides that "[a]ny person who has been charged with a criminal offense . . . against whom *charges have been*

---

[1] It is not clear if the court did this at the request of counsel or *sua sponte*, or if there was a specific purpose for doing so. The expungement statutes do require a waiting period after the dismissal of a charge or a conviction before one can seek expungement, so the court may have applied the dismissal *nunc pro tunc* for this reason. *See* W. Va. Code § 61-11-25 to 26 (2012).

1

*dismissed*, and not in *exchange for a guilty plea to another offense*" can file for an expungement of that charge. (Emphasis added). On August 12, 2022, the circuit court denied D.K.'s petition for expungement and concluded that it did not have the discretion to even consider whether expungement was appropriate in this case. The majority agreed with this decision and found that, because the plea agreement and PDA were entered into contemporaneously, D.K.'s possession charge was dismissed "in exchange for" the guilty plea to his improper registration charge in the plea agreement, and, therefore, concluded that his possession charge was not eligible for expungement under West Virginia Code § 61-11-25(a) (2012).[2] However, the circuit court and majority failed to apply the plain, clear, and ordinary meaning of the statute; went beyond their proper roles; reached a result which is contrary to that plain, clear, and unambiguous statutory language; and produced an absurd and unfair result that is inconsistent with the Legislature's intent and the purpose of expungement statutes.

_____

[2] The circuit court specifically found that, because "the underlying [possession] charge was not a verdict of not guilty nor was it dismissed for a reason other than a plea of guilty to another offense," D.K. "was not eligible for the relief requested pursuant to West Virginia Code § 61-11-25 [(2012)]." This dissent supports the idea that D.K. should have been eligible for consideration of his expungement request in the discretion of the trial court pursuant to West Virginia Code § 61-11-25 (2012). The circuit court and majority interpreted the statute to find that the circuit court did not have discretion to consider D.K.'s expungement request because they concluded that his possession charge was dismissed in exchange for pleading guilty to another charge. For the reasons explained herein, I believe that the circuit court did have such discretion. The Supreme Court has noted that "[p]ursuant to West Virginia Code § 61–11–25 [(2012)], a circuit court has the statutory authority to expunge records of dismissed criminal charges. However, even if criminal charges are dismissed, there is nothing in the statutory language that mandates expungement." *In re Krein*, No. 13-0694, 2014 WL 1672945 (W. Va. Apr. 25, 2014) (memorandum decision). *See also In re I.S.A.*, 244 W. Va. 162, 171, 852 S.E.2d 229, 238 (2020) (Armstead, J. dissenting) ("[West Virginia Code § 61-11-25 (2012)] does not provide an applicant with an automatic right to an expungement . . . . In enacting the expungement statute, the Legislature has clearly guarded the circuit judge's discretion to consider the facts of the case and determine if the expungement is appropriate."). Therefore, had the circuit court's decision been reversed and it was found to have the discretion to consider D.K.'s expungement request, approval or denial of such relief was within the circuit court's full discretion.

West Virginia's law on statutory interpretation and construction is well-established, and it is long-settled that statutes that are expressed in plain, clear, and unambiguous language, shall not be further construed or interpreted by a court.[3] "When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case, it is the duty of the court not to construe but to apply the statute." Syl. Pt. 8, *State ex rel. Devono v. Wilmoth*, No. 22-0480, __ W. Va. __, __ S.E.2d __, 2023 WL 4013892 (June 15, 2023) (quoting Syl. Pt. 5, *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W. Va. 137, 107 S.E.2d 353 (1959)). The Supreme Court has further provided that "[t]he primary rule of statutory construction is to ascertain and give effect to the intention of the Legislature." *Id.* at *2, 2023 WL 4013892, Syl. Pt. 7 (citing Syl. Pt. 8, *Vest v. Cobb*, 138 W. Va. 660, 76 S.E.2d 885 (1953)).

---

[3] In fact, this concept was established long before West Virginia was even a state. In 1819, the Virginia Supreme Court held, "[i]t will certainly be admitted, that when the words of a Law are clear and unambiguous, no constructions ought to be allowed against their plain meaning. . . ." *Commonwealth v. Gaines*, 2 Va. Cas. 172, 175 (1819). That concept has governed the law of this state ever since and has been expressed many times over by the Supreme Court of Appeals of West Virginia. *See* Syl. Pt. 2, *State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 588 (1951) ("A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect."); Syl. Pt., *State v. Patachas*, 96 W. Va. 203 (1924) ("Where the language of a statute is free from ambiguity, and the intent is plain, there is no occasion for interpretation by a court. 'It is not allowable to interpret what has no need of interpretation.'"); Syl. Pt., *Kelley v. Bowman*, 68 W. Va. 49 (1910) ("Where the words of a statute are plain, free of ambiguity, conveying a plain intent, there is no room for construction by a court, but only for obedience to the legislative will."); Syl. Pt. 10, *Wellsburg & S.L.R. Co. v. Panhandle Traction Co.*, 56 W. Va. 18, 48 S.E. 746 (1904); (When the language of a statute is ambiguous or the meaning doubtful, the surrounding circumstances, the history of the times, and the defect or mischief which the statute was intended to remedy, may be resorted to in seeking its true meaning and purpose.").

Thus, the majority correctly notes that the Supreme Court has long held that "[a] statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syl. Pt. 3, *In re: I.S.A.*, 244 W. Va. 162, 852 S.E.2d 229 (2020) (quoting Syl. Pt. 2, *State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 488 (1951)). Given this reference, the majority apparently, and I believe correctly, found that West Virginia Code § 61-11-25(a) (2012) was clear and unambiguous in expressing the Legislature's intent. However, although the majority correctly articulates the standard for statutory construction, it fails to act in accordance with it. Rather, it did just the opposite and instead placed its own interpretation onto it, actually forcing a meaning inconsistent with the clear and plain meaning of the statute and the intent of the Legislature.

The majority fails to fully consider the Legislature's intent and the remedial nature and purpose of West Virginia expungement statutes. The Supreme Court has held that "[i]t is a cardinal rule governing the interpretation of statutes that the purpose for which a statute has been enacted may be resorted to by the courts in ascertaining the legislative intent." *State ex rel. W. Va. Div. of Corrections v. Ferguson*, __ W. Va. __, __, 889 S.E.2d 44, 53 (2023) (quoting *State ex rel. Bibb v. Chambers*, 138 W. Va. 701, 717, 77 S.E.2d 297, 306 (1953)). Further, "[t]he limits of the application of a statute are generally held to be coextensive with the evil or purpose it was intended to suppress or effectuate, and neither stop short of, nor go beyond, the purpose which the Legislature had in view." Syl. Pt. 7, *State ex rel. W. Va. Div. of Corrections v. Ferguson*, __ W. Va. at __, 889 S.E.2d at 44 (quoting Syl. Pt. 4, *City of Charleston v. Charleston Brewing Co.*, 61 W. Va. 34, 56 S.E. 198 (1906)). D.K. argues that the remedial purpose intended by the Legislature

in creating such statutes would be undermined if D.K. was denied eligibility to expunge his possession charge after fulfilling the conditions of his PDA. I agree.

The only known purpose of expungement statutes is to clear the record of someone who has been charged or in some cases convicted of a crime and to provide them with a second chance. It is widely accepted that the policy behind expungement "is to encourage rehabilitation and to recognize that a previously convicted offender has succeeded in turning his life around." Sara C. Schiavone, Comment, *Wiping the Slate Clean: A Proposal to Expand Ohio's Expungement Statutes to Promote Effective Offender Reintegration*, 45:509 Capital U. L. Rev. 509, 522 (2017) (citations omitted). Charges or convictions, such as the ones faced by D.K., can and do have very significant negative impacts on one's future. "Research overwhelming shows that bearing a criminal record raises significant barriers to employment, housing, and various other opportunities." J.J. Prescott & Sonja Starr, *The Power of a Clean Slate*, CATO Institute (2020), https://www.cato.org/regulation/summer-2020/power-clean-slate. "Even a *nolo contendere* plea to a misdemeanor will saddle an individual with . . . collateral consequences. These consequences permeate nearly every aspect of an offender's life: education, recreation, housing, travel, and domestic life." Valena E. Beety, Judge Michael Aloi, Evan Johns, *Emergence from Civil Death: The Evolution of Expungement in West Virginia*, 117 W. Va. L. Rev. Online 63, 70–71 (May 19, 2015). Therefore, many states have enacted expungement statutes, such as the one at issue in this case, to allow criminal records to be cleared and help reduce the number of real obstacles faced by those with criminal charges or convictions. Expungement is a highly effective way to clear a criminal record, help remove the collateral consequences one may face, and allow for a more successful re-integration into society, benefiting both the individual and society as a whole.

Schiavone, *Wiping the Slate Clean*, *supra* at 523–25. Therefore, such laws should be effectuated in a manner that fulfills their purpose of clearing one's criminal record and removing the negative consequences created by their criminal record.

The Supreme Court has even found that the expungement provision found in West Virginia Code § 60A-4-407(b) was intended to be remedial by the legislature. *State v. A.D.*, 242, W. Va. 536, 836 S.E.2d 503, 509 (2019). Thus, reasonably, the same should apply to West Virginia Code § 61-11-25. In that regard, the Supreme Court has also held that "[t]he policy that a remedial statute should be liberally construed in order to effectuate the remedial purpose for which it was enacted is firmly established." *State ex rel. City of Wheeling Retirees Ass'n, Inc. v. City of Wheeling*, 185 W. Va. 380, 383, 407 S.E.2d 384, 387 (1991) (citing 3 N. Singer, Sutherland [on] Statutes and Statutory Construction § 60.01, at 55 (Sands 4th ed. rev. 1986)). Therefore, because of the remedial nature of West Virginia Code § 61-11-25, the circuit court and the majority should have construed it in a way that effectuates its remedial purpose. D.K. exhibited good behavior, followed and successfully completed all of the requirements of his PDA, and was able to have his possession charge dismissed. However, because the circuit court and the majority found that the circuit court does not have the discretion to offer him expungement of said charge, he still faces the collateral consequences and real obstacles of having that charge on his record. The circuit court and the majority should have applied the statute's plain, clear, and ordinary meaning, which would have protected the circuit court's discretion and provided D.K. with the chance at remediation through expungement.

The language of West Virginia Code § 61-11-25(a) (2012) is clear and unambiguous and, under West Virginia's laws of statutory construction, should not be interpreted by the courts but simply applied. However, the majority places its own, somewhat tortured, interpretation on the statute, essentially re-writing it in the process. In this case, dismissal of D.K.'s weapon charge was given in exchange for his guilty plea to the vehicle registration charge. So, under the plain and ordinary meaning of the statute, the weapon charge was not eligible for expungement under West Virginia Code § 61-11-25(a) (2012). The possession charge was not dismissed at that same time. In fact, under the terms of the plea agreement and PDA, D.K. was required to and did plead guilty to the possession charge. Yes, there was a potential, future opportunity for the possession charge to be dismissed, but it was not automatic nor guaranteed. In order to obtain dismissal, D.K. had to comply with multiple, specific terms and conditions for a two-year time period, and then, and only then, would the possession charge to which he pled guilty be subject to dismissal. D.K. complied with these terms and conditions for the full two-year time period, successfully completing the PDA, and in exchange for that, the possession charge was eventually dismissed.

Specifically, the PDA provided that prosecution of the possession charge would be delayed for twenty-four months if D.K. abided by the conditions and requirements of the agreement. The conditions of the PDA were as follows:

> 1. You shall not violate any law of the State of West Virginia, the Federal Government, or any other state or municipality with the United States of America.
>
> 2. You shall maintain contact with counsel and keep counsel informed of your whereabout in the event the State is required to contact you.
>
> 3. You shall maintain or be actively seeking employment if not enrolled full time as a student.

4. You shall abide by all terms and conditions of any sentence that you are given in the . . . misdemeanor cases, including complying with all terms and conditions of probation or other alternative sentence if the Court imposes such alternative sentence.

5. You shall not possess or consume any alcoholic beverages or controlled substances for which you do not possess a valid prescription.

If any of these conditions were violated by D.K. at any time during the twenty-four-month period, prosecution for the possession offense, to which he had already pled guilty, would have been initiated. However, the PDA provided to D.K. that "[a]fter successfully completing [the] diversion program and fulfilling all of the terms and conditions of the agreement, no prosecution for the offense . . . will be instituted . . . and the charges against [D.K.] *will be dismissed* and deferred." (Emphasis added). Therefore, the PDA clearly stated that D.K.'s possession charge would be dismissed only if he fulfilled the conditions and requirements of the PDA, and in fact, that is exactly what happened.

The possession charge was not dismissed as a part of the plea agreement but was dismissed seven years later upon successful completion of the PDA. Had D.K. failed to meet all of the requirements of the PDA, his possession charge would *not* have been dismissed. The dismissal was completely contingent on his successful completion of the PDA and, therefore, was not dismissed "in exchange for" his guilty pleas in the plea agreement. While the PDA, arguably, may have been a part of the "exchange for" the overall plea agreement, the possession charge was only dismissed because D.K. fulfilled the PDA conditions.[4] The majority believes that D.K. asked

---

[4] It should be noted that D.K. did not file a request for expungement of his deadly weapon misdemeanor charge because it would not have been eligible for dismissal under West Virginia Code § 61-11-25 (2012). The deadly weapon charge was clearly dismissed in the plea agreement in exchange for a guilty plea to the felony possession charge and misdemeanor improper

8

this Court to take a "narrow view" of the statute by arguing that his possession charge was dismissed not because of a guilty plea to another offense but because of his completion of the PDA. However, this view is not narrow or broad. It is simply applying the statute as it is plainly written.[5] Thus, D.K. should have been eligible for expungement relief for his possession charge under West Virginia Code § 61-11-25 (2012).

The majority hinges its decision on the language of the plea agreement which provides that "[s]aid deferral of the offense shall be without prejudice to the State's interests and pursuant to a pretrial diversion agreement executed contemporaneously and in conjunction with the Plea Agreement." The majority reasons that this language demonstrates that the PDA, which gave D.K. the possibility of future dismissal of his possession charge, was agreed upon "in exchange for" his guilty pleas in the plea agreement. Thus, by the majority's interpretation, it followed that dismissal of the possession charge was made "in exchange for" his guilty pleas. However, this goes well beyond the plain meaning of the statute.

---

registration charge. This is the exact situation that is contemplated within the plain language of the statute. Expungement relief is clearly prohibited for the deadly weapon charge because it was dismissed "in exchange for a guilty plea to another offense." Thus, the deadly weapon charge dismissal made in exchange for a guilty plea to the other offenses is clearly distinguishable from the possession charge dismissal that was done after successful completion of the PDA.

[5] In fact, the majority applies a narrow view as to the right of expungement of charges by finding that D.K.'s charge should not be expunged. At the same time, it applies a broad view of the limitations of the statute by finding charges could not be expunged if they were dismissed at a later time as part of a diversion in exchange for a guilty plea. These views do not fall under the plain and ordinary meaning of the statute nor are they consistent with the remedial nature and legislative intent of expungement statutes.

The language of West Virginia Code § 61-11-25(a) (2012) is clear and unambiguous and should not have been interpreted or construed beyond its plain and ordinary meaning by the circuit court or the majority. The statute was written with common, everyday words that are not particularly complicated or difficult to understand. It is not awkward or poorly written and leaves no room for further interpretation or construction. The key language of the statute, in its simplest form is "dismissed in exchange for." "Exchange," absent other qualifying language, generally, means "the act or process of substituting one thing for another" or "reciprocal giving and receiving." *Exchange*, Merriam-Webster, https://www.merriam-webster.com/dictionary/exchange (last visited Aug. 2, 2023). "Dismiss" simply means "to reject serious consideration of (something or someone)." *Dismiss*, Merriam-Webster, https://www.merriam-webster.com/dictionary/dismiss (last visited Aug. 2, 2023). In this case, again, in the simplest terms, the weapon charge was dismissed in a simultaneous exchange for D.K.'s guilty plea to the improper vehicle registration charge and, separately, the possession charge was placed in diversion where the results were ultimately unknown, and dismissal was not automatic nor guaranteed but rather was contingent and uncertain. D.K.'s possession charge was dismissed only because he successfully satisfied the terms and conditions over a two-year period of time, not because he pled guilty to another offense.

While being given the right to enter the PDA, with the possibility of future dismissal of the possession charge, was likely part of an "exchange for" D.K.'s guilty pleas in the plea agreement, *dismissal of the possession charge* was clearly not made "in exchange for" the guilty

pleas.[6] "In exchange" was effectively rewritten by the majority to provide: 'as or in *any part* of an exchange,' and "dismissed" was effectively rewritten to provide: 'dismissed, placed in pretrial diversion, or otherwise given an opportunity for some potential future dismissal upon successful completion of some additional terms and conditions.' However, the language of West Virginia Code § 61-11-25(a) (2012) is clear and does not provide that a charge dismissed *as part of a pretrial diversion agreement* made in exchange for a guilty plea to another offense is ineligible for expungement. The statute only requires that the charge was not dismissed "in exchange for a guilty plea to another offense."

Furthermore, it is telling that, in order to reach their result, the State in its argument and the majority in its opinion actually substitute the words "resolved" and "resolution" in place of "dismissal." For example, the majority notes that "the State argued that D.K.'s charges arising from the February 19, 2013, incident were *resolved* 'in exchange for a guilty plea to another offense.'" (Emphasis added). The majority adopts that language itself stating, "in the instant case, D.K. was required to enter a plea of guilty in *resolution* of all his pending charges . . . ." (Emphasis added). However, "dismissed" and "resolved" are very different words with very different meanings. Thus, the majority, again, essentially rewrites the meaning of the West Virginia Code § 61-11-25(a) (2012) and places its own, unique construction onto the statute. The language of the statute simply does not say that one is eligible for expungement, only so long as that charge was

_____

[6] In fact, as indicated above, as part of the plea agreement, D.K. was required to plead guilty to the possession charge. How could he plead guilty to the possession charge and at the same time have it dismissed in exchange for a guilty plea to another offense? Dismissal was only given after successful completion of the PDA agreement.

11

'not resolved in exchange for a guilty plea to another offense.' D.K.'s possession charge may have been "resolved" through a PDA, in exchange for a guilty plea in the plea agreement. However, again, it was only dismissed because D.K. successfully complied with the multiple requirements of the PDA for the required two-year period.

The majority also fails to consider D.K.'s "absurd result" argument. D.K. argues that when West Virginia Code § 61-11-25 (2012) is read *in pari materia* with West Virginia Code § 61-11-26 (2020), the Legislature obviously intended that one in D.K.'s position would be eligible for expungement relief. West Virginia Code § 61-11-26 (2020) provides that a person actually convicted of misdemeanors and nonviolent felonies, including controlled substances felonies, may petition the circuit court for expungement of the conviction, with certain temporal requirements and eligibility limitations. Therefore, D.K. argues that, because a person who actually has been *convicted* of a felony or misdemeanor under § 61-11-26 could be eligible for expungement relief, it does not logically follow that one who was *not convicted* of a felony or misdemeanor, and had charges dismissed pursuant to successful completion of diversion, would not be able to expunge the charges against him under § 61-11-25.

The Supreme Court has held that "[w]here a particular construction of a statute would result in an absurdity, some other reasonable construction, which will not produce such absurdity, will be made." Syl. Pt. 9, *Vanderpool v. Hunt*, 241 W. Va. 254, 823 S.E.2d 526 (2019) (quoting Syl. Pt. 2, *Newhart v. Pennybacker*, 120 W. Va. 774, 200 S.E. 35 (1938)). Additionally, "[i]t is the duty of a court to construe a statute according to its true intent, and give to it such

12

construction as will uphold the law and further justice." Syl. Pt. 8, *Vanderpool*, 241 W. Va. 254, 823 S.E.2d 526 (citing Syl. Point 2, *Click v. Click*, 98 W. Va. 419, 127 S.E. 194 (1925); Syl. Pt. 2, *Conseco Fin. Serv'g Corp. v. Myers*, 211 W. Va. 631, 567 S.E.2d 641 (2002)). D.K. argues that if he would have failed to meet the conditions of the PDA and was ultimately convicted for the possession charge, under the circuit court's decision, he would have been in a better position to obtain relief through expungement under § 61-11-26 than he was after fulfilling the requirements of the PDA and getting the charges dismissed. It certainly is not logical or reasonable, nor is it consistent with the remedial legislative intent that D.K., or anyone in his situation, would be in a better position for expungement had they ultimately been convicted of the charge. Consequently, the majority's decision affirming the circuit court's construction of § 61-11-25 has created an "absurd result."

Both the circuit court and this Court had a duty to construe the statute in a manner that would not produce such an absurdity. Limiting the statute to its plain, ordinary meaning, as discussed above, would not have created such an "absurd result." Because D.K.'s possession charge was not dismissed "in exchange for a guilty plea to another offense," he was eligible for expungement of the possession charge which was ultimately dismissed.

In all, the language of West Virginia Code § 61-11-25(a) (2012) simply does not state that a charge could not be expunged if it was 'ultimately dismissed as part of a diversion agreement in exchange for a guilty plea to another offense.' Nothing prevented the Legislature from writing the statute in this fashion if that was in fact its intent. It is not the right or province of

13

the court to ignore, alter, or destroy the clear meaning and intent of the Legislature, which it expressed in the statute by clear and unambiguous language. Moreover, it is not for the court to ignore the language of the statute, insert its own language, or rewrite the statute to fit its own personal, philosophical, or political leanings. It is a court's duty to apply the statute as written even if it does not, for whatever reason, like or agree with the statute or its purpose. Some people find expungement statutes repugnant, believing them to be inconsistent with personal responsibility and accountability or that they amount to an effort to rewrite history. But, again, when the Legislature passes laws and enacts statutes, it is presumably balancing these interests with other interests when making its policy decisions. Here, the Legislature presumably wrote this statute to balance responsibility and accountability for one's conduct with the long-term adverse impact of criminal charges or convictions on individuals and society. Therefore, the majority should have applied the plain, clear, and ordinary meaning of the statute and allowed for D.K.'s possession charge to be considered by the circuit court for expungement.

For the foregoing reasons, I believe reversal of the circuit court's August 12, 2022, order would have been appropriate. D.K. should have been eligible for relief through expungement. Accordingly, I respectfully dissent.